## Delk v. Commonwealth.

(Decided February 19, 1932.)

H. C. KENNEDY and WILLIAM M. CATRON for appellant.

BAILEY P. WOOTTON, Attorney General, and FRANCIS M. BURKE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY HOBSON, COMMISSIONER— Affirming.

Roscoe Tartar was shot by Chester Delk on June 24, 1930. Tartar was taken to a hospital and remained there until July 5, when he was discharged. He died on August 3, 1930. On October 9, 1930, an indictment was returned against Delk, charging him with maliciously and feloniously shooting Tartar. On October 25, 1930, the case was tried, but the jury failed to agree. On February 9, 1931, the court, on the motion of the commonwealth attorney, and over the objections of the defendant, dismissed the indictment and referred the case to the grand jury. On February 10, 1931, the grand jury returned an indictment against Delk for the murder of Tartar. The case came on for trial on February 17, 1931. The jury returned a verdict against Delk, finding him guilty of malicious shooting and fixing his punishmnt at two years in the state prison. The court overruled his motion for a new trial and entered judgment upon the verdict. He appeals.

The parties lived about a half mile apart, near Caintown, in Pulaski county. Delk was operating a reaper on his place. About the middle of the afternoon he needed some bolts, necessary for it, and he went up to Caintown to get them. Tartar had been to Somerset that day in his car and as he came back he stopped at Caintown shortly before Delk reached there. Tartar was drinking and spoke of shooting up the town when he got there. He went into the store, of T. A. Hail, leaving his car in front of the store and bought a whet rock several inches long with a handle to it. He took it by the handle and went out to the door and was talking to Everett Eads saying: "This would make a damn good billy." He had Eads by the hand as Delk approached. Delk, without saying a word passed into the store. Tartar then said, "He won't talk but damn him I will make him talk." He then went out to the car, put the whet rock in the car and put his pistol, which he had left in the car, in his pocket. He returned to the store and went on to the water bucket, which was on the opposite side of the room from where Delk was then sitting on the counter. He took hold of the dipper and rattled it around a few times in the bucket. Delk at this point got down off the counter and left the store. He then went to a filling station and from there behind the store, which was about 75 feet long. In the meantime, Tartar went to the front door and looked in the direction in which he had seen Delk go. He then went back in the store and after a few minutes came out to the door again. Delk, at this time, was coming up on the right-hand side of the store, and, when he reached the front, the shooting began. According to the proof for the commonwealth, Delk had his pistol in his hands and fired two shots before Tartar fired any. According to the proof for the defendant, Tartar said, "Damn you I haven't turned anybody up," and then fired the first two shots at Delk.

Tartar's pistol was large and Delk's pistol was smaller. Delk testified that he saw Tartar's pistol in his pocket when he came in the store, and this was the reason he left. The proof showed that Tartar thought that Delk had "turned him up" for moonshining. Delk proved numerous threats that Tartar had made against him, and the commonwealth proved threats that Delk had made against Tartar. They were on bad terms and had been for some months. Tartar was a violent dangerous man when drinking. Delk was sober.

It is earnestly insisted for the appellant that the verdict of the jury is palpably against the evidence and should be set aside on the ground that Delk acted in self-defense. But this turned simply on the credibility of the witnesses. If the testimony for the commonwealth was true, Delk not only fired the first two shots, but he brought on the difficulty by leaving a place of safety and going up to the front of the store when he had reason to know that Tartar was there, and from the circumstances the jury might infer that he came back for the purpose of having the difficulty out then between him and Tartar. While there is much force in the argument for the defendant, the court cannot say that the verdict is palpably against the evidence.

Appellant complains that the circuit court sustained the motion of the commonwealth attorney to dismiss the indictment for malicious shooting and refer the case to the grand jury. But this is a matter resting in the discretion of the court, and a reversal will not be granted therefor, unless discretion is abused. Clearly there was no abuse of discretion here. It was a question for the jury under the evidence, whether Tartar's death was by reason of the wound he received or by reason of the disease he then suffered from.

The appellant earnestly insists that the court erred in the admission of evidence. Judge Kennedy was one of the attorneys for the defendant, and, on the re-examination of T. A. Hail by the commonwealth attorney, after his cross-examination by Judge Kennedy, this occurred:

"Q. Judge Kennedy asked you if it was customary for a customer at your store to go to the door and stand three or four minutes with a pistol in his hand; I'll ask you whether or not it is customary for people to come to your store and sit for a while, and then slip outside the door, and to waylay other people and shoot them as they go by? (The attorney for the defendant objects to the question, and moves the court to exclude it from the consideration of the jury; said objection and said motion are sustained by the court, who admonished the jury that they will not consider the question for any purpose, and to which rulings of the court the attorneys for the commonwealth except. The attorneys for the defendant thereupon move the court to discharge the jury and to continue this case; which said motion

the court overruled, and to which said ruling of the court the attorneys for the defendant except.)''

The court properly sustained the defendant's objection to the question, for it was simply argumentative; but the court is unable to see that defendant's substantial rights were prejudiced by the asking of the question, and it is expressly provided by statute that no case shall be reversed unless for an error prejudicial to the substantial rights of the defendant.

On the re-examination of Everett Eads by Judge Bethurum, who was one of the attorneys in the prosecution, this occurred:

"Q. Judge Kennedy asked you if you wasn't basing your statement that Delk fired first solely and alone on that fact that you could see Delk and could not see Tartar? A. No, I couldn't see Tartar.

"Q. Was there any shots fired from about the store house before Chester Delk fired those two shots that you have already told about? (The attorneys for the defendant objected to the question. Said objection overruled by the court, and to which said ruling of the court the attorneys for the defendant excepted.) A. No, I didn't hear any.''

There was no error in this. The witness had positively stated that he saw Delk raise his pistol and fire the first two shots, and he could properly state that he did not hear any other shots before this.

Harry Allen stated that Tartar had Everett Eads by the right arm and was saying he was going to knock him in the head with a rock, and then this followed:

"Q. What was his manner, was he mad or in a good humor? A. He'd been laughing and joking, and I suppose he was still joking. (The attorneys for the defendant objected to the latter part of the answer and moved the court to withdraw it from the consideration of the jury; which said objection and motion the court overruled, and to which said ruling of the court attorneys for the defendant excepted.)''

"Q. There wasn't any trouble there, was there? (The attorneys for the defendant objected to the question; said objection was overruled by the court, and to which said ruling of the court, attorneys for the defendant excepted.) A. No, sir.''

There was no error in this. There was no trouble between Tarter and Eads. All the evidence showed that what took place between Tarter and Eads was simply due to the fact that Tarter was drinking.

When Grace Allen was on the stand she was asked what her feelings were toward Chester Delk and she said, "We are friendly." She was then asked if she was not mad at Chester Delk because she had heard that he had threatened to turn up some of her folks for beng in the liquor business. The commonwealth attorney objected to the question and the court sustained the objection. But further along in her testimony she stated that she testified on the examining trial and then this followed:

"Q. ˙ On the trial, I will ask you if you were asked this question and made this answer: 'You heard that Chester Delk had threatened to turn you and Tartar up for being in the liquor business? A. Yes, I heard talk about it.' A. I guess I have heard it."

The defendant thus obtained, in substance, the fact that he wished to prove by the previous queston, and clearly his substantial rights were not prejudiced.

On the examination of Carl Brashear this occurred:

"Q. You stated, I believe, that you could see Delk and could not see Tartar? A. Yes, sir.

"Q. Isn't that the reason you say that you think Delk fired first? A. I could see him, yes.

"Q. You don't know who fired first do you? A. Yes, I think Delk did.

"Q. Don't you make that statement because you could see him and couldn't see Tartar? A. The way I look at it I think Delk shot first.

Q. Isn't it true that the only reason you have for making that statement is the fact that you could see Chester Delk and you could not see Tartar? (The attorneys for the commonwealth objected to the question; said objection sustained by the court, and to which said ruling of the court the attorneys for defendant except and avow that the witness, if permitted to answer, would answer in the affirmative.)"

The witness had fully stated all that he saw, and the court properly confined his testimony to what he saw.

The previous examination had brought out fully all that he know.

On the cross-examination of J. E. Jasper, a witness for the commonwealth, this occurred:

"Q. Chester Delk was showing you his pistol? A. Yes, sir.

"Q. Did you show him your pistol? A. He saw mine, it was in my car.

"Q. Yours was laying in your car? A. Yes sir.

"Q. You were taking your pistol around with you wherever you went? A. Yes, sir.

"Q. Doctor, have you got a pistol on you now? (The attorneys for the commonwealth objected to the question; said objection sustained by the court and to which said ruling of the court attorneys for the defendant excepted.)"

Clearly it was immaterial whether the doctor had a pistol on him at the trial or not.

The court carefully allowed all the material evidence to be admitted, and on the whole case there was no substantial error in the admission or rejection of testimony to the prejudice of the defendant's substantial rights.

The instructions of the court to the jury are not complained of; but following the reading of the instructions to the jury, this occurred:

"At this point the court made the following statement to the jury on motion of defendant's attorney:

" 'It is agreed as part of the evidence in this case, and for the purpose of making up and completing the record, that there was an indictment pending in this court against the defendant, Chester Delk, for the offense of malicious shooting and wounding, based upon the facts brought out in this case, and that at a former day of this court that indictment and case was dismissed upon the motion of the commonwealth attorney. In the indictment that was dismissed the defendant, Chester Delk, was charged with malicious shooting and wounding Roscoe Tartar at the same time and place as disclosed in the evidence in this case.'

"On motion of attorney for commonwealth the court made the following statement to the jury:

" 'The additional statement is made that after indictment charging the defendant with malicious shooting and wounding was returned, that Roscoe Tartar died and for that reason the commonwealth attorney moved the court to dismiss the indictment.'

" (The attorneys for the defendant object to the last statement; said objection overruled by the court, to which said ruling of the court defendant excepts. The attorneys for the defendant move to withdraw said last statement from the consideration of the jury, which motion the court overruled and to which said ruling of the court the attorneys for the defendant except.) "

Section 225 of the Criminal Code of Practice provides:

"The court shall, on the motion of either party and before any argument to the jury, instruct the jury on the law applicable to the case, which shall always be given in writing."

This provision only applies to the instructions of the court to the jury "on the law applicable to the case." Other instructions given during the progress of the trial are not required to be in writing. Thus it is common practice for the court to instruct the jury orally that certain evidence is not to be considered by them or for what purpose certain evidence may be considered. The instruction here was simply as to the orders previously entered in the prosecution so that the jury would understand what had been done and was not required to be in writing.

It is earnestly insisted that the court erred in adding, to what the defendant requested, the statement that Roscoe Tartar died after the indictment charging the defendant with malicious shooting and wounding was returned, when the fact was it was returned before he died. But this in no wise affected the defendant. He was only found guilty of malicious shooting. The effect would have been just the same if the court had used the word "before" instead of the word "after." The court by inadvertence simply made a mistake in the dates, but the effect was substantially the same as it would have

been had he used the word "before" and not the word "after," for the dates were not material. The court's attention was not called to the correct dates.

After the argument of the case to the jury, the defendant showed the court that he had just discovered that J. S. Sandusky, the commonwealth attorney, had been before the trial employed to assist B. J. Bethurum in an action by the administratrix of Roscoe Tartar to recover of defendant $25,000 on account of his death, and this order was entered:

> "The defendant thereupon, and while the jury was still out deliberating upon a verdict, moved the court to discharge the jury and continue this case to the next term of the court on account of the fact that the Hon. J. S. Sandusky, commonwealth's attorney, had been and was then employed to prosecute an action for Twenty-five thousand dollars ($25,000) damages for the administratrix of Roscoe C. Tartar, deceased, for the alleged wrongful killing of the said Tartar by the defendant, which motion the court overruled, to which ruling of the court the defendant at the time excepted."

Appellant insists that this was error and relies on the following authority:

> "If the prosecuting attorney has a personal interest in obtaining an acquittal or conviction, it may disqualify him. If he himself is involved in the offense under investigation he will not be allowed to conduct the prosecution. He should not act in a case if he has before appeared in a civil suit against the same party, based substantially upon the same facts." 18 C. J., p. 1312.

The above is from the chapter on district and prosecuting attorneys, and the thing discussed is when they may or not properly act, not when a new trial should be granted. One of the cases cited is Roberts v. People, 11 Colo. 213, 17 P. 637. There the prosecuting attorney declined to act. The court excused him, and the defendant complained. Another case cited is People v. Fitzsimmons, 183 Mich. 284, 149 N. W. 976. The statute in force provided that in such a case the state's attorney should not act, and that the court should appoint a special prosecutor. The motion was made on the statutory

grounds before the trial was begun, and it was held error, under the statute, to overrule the motion. But we have no statute on the subject, and no motion was made here until the jury had gone to their room to consider their verdict.

Another case cited to sustain the text is State v. Halstead, 73 Iowa, 376, 15 N. E. 457. There the attorney had represented the defendant on a preliminary hearing of the same matter and so had learned of the facts from him, and it was held that he could not properly accept a subsequent inconsistent employment. Practically to the same effect is State v. Rocker, 130 Iowa, 239, 106 N. W. 645; People v. Hanson, 290 Ill. 370, 125 N. E. 268; Perfect v. State (Ind. Sup), 141 N. E. 52. On the other hand, in Iden v. State, 112 Neb. 454, 199 N. W. 734, it was held that an attorney who had prosecuted a civil case against the defendant was not disqualified to prosecute him on indictment for perjury committed in the civil suit.

The above are all the pertinent cases found on a search of the digests. They go no farther in the absence of a statute than to sustain the right of a state's attorney to decline to prosecute where he is employed in a civil suit in regard to the same matter and to uphold the power of the court to protect the defendant in his right to a fair trial on motion timely made and a proper showing of the facts. No showing was made here until the jury had retired to consider their verdict, and so the question turns substantially on the right of the defendant to a new trial on the ground that he "had not received a fair and impartial trial." Criminal Code of Practice, sec. 271, subd. 7.

The defendant was ably defended. The trial lasted several days. A mass of evidence had been heard, and on a careful review of the record the court finds no evidence of misconduct by the commonwealth attorney or error committed by the court on the merits of the case. Section 340 of the Criminal Code of Practice provides:

"A judgment of conviction shall be reversed for any error of law appearing on the record when, upon consideration of the whole case, the court is satisfied that the substantial rights of the defendant have been prejudiced thereby."

The right of appeal is by statute, and under its express provision the judgment of conviction may only

be reversed when, upon consideration of the whole record, the court is satisfied that the substantial rights of the defendant have been prejudiced. This does not appear here.

Judgment affirmed.