# Blackburn v. Commonwealth.

November 10, 1950.

R. C. Tartar, Judge.

James W. Lambert and E. R. Denney for appellant.

A. E. Funk, Attorney General and Zeb A. Stewart, Assistant Attorney General for appellee.

VAN SANT, COMMISSIONER—Reversing.

The appeal is from a judgment convicting appellant of the crime of manslaughter and sentencing him to serve fifteen years in the state reformatory.

The only eyewitness introduced by the Commonwealth is Preston Moore, an uncle of the deceased, who admitted that he was drunk at the time the affray took place. This witness told an entirely different story from that testified to by the other six witnesses, one of whom was totally unrelated to either of the parties, five being close relatives of appellant, and the sixth being appellant himself.

Moore testified that the shooting took place in appellant's restaurant in the town of Livingston; that when he arrived at the restaurant the deceased, James Smith, was in the back room; that both he and Smith were drinking. The witness went to the back room where Smith and five or six other persons were con-

gregated. Smith was trying to sell someone a suit of clothes. Shortly thereafter, the deceased left the restaurant stating that he would get the suit and return, which he did in about fifteen minutes. When he returned he had a bundle under his arm. He went into the back room, threw the bundle down and said to appellant: "There are your clothes," whereupon appellant and he proceeded to the front room and engaged in an argument. The witness quoted Smith as saying to appellant: "If you want a fight I'll fight you fair"; appellant, who was standing on the customers side but at the end of a counter, ran into another room, returned with a pistol in his hand, and shot Smith when he was about one foot and a half away from him. That up to that time Smith had made no effort to harm Blackburn and was standing with his hands hanging at his side.

Appellant and Ben Thomas, the disinterested witness, testified that when Smith first came into the kitchen of the restaurant they were seated and engaged in a conversation; that Smith presented a bottle of whiskey and asked them if they would like to have a drink; both declined the invitation. Smith then took a drink and said to appellant: "I think you are a god-damn son of a bitch."

Appellant retorted: "I know of some people who are dirtier."

Smith then said: "You've got the advantage of me, I ain't got a gun, but my dad has a good one and I'll go get it."

Smith then walked out and returned in about an hour. When he returned he slammed the front door, took off his coat, threw it on a table and stated: "Arie, I'm back, you god-damn son of a bitch."

He placed his hand in his right front pocket and advanced toward appellant, whereupon appellant reached under the counter for his pistol and shot Smith who was within arm's reach of him. The other eyewitnesses gave the same account commencing with Smith's return and ending with the firing of the shot. All testified that Smith was drunk and that the witness Moore was drunker and staggering. No one testified that Smith actually was possessed of a deadly weapon.

It is not contended that the evidence is not sufficient to have justified the court's action in submitting the case to the jury; and, although we would have placed little credence in Moore's testimony in respect to the details of the crime had we been members of the jury, we are not in position to say that his testimony does not support the verdict.

The principal ground for reversal is that the Commonwealth's Attorney engaged in prejudicially improper argument and the other ground is that the court erred in the admission of incompetent evidence on behalf of the Commonwealth and the rejection of competent evidence offered by appellant. Since the question concerning the propriety of the argument in part addresses itself to the competency or incompetency of evidence, we will consider the second complaint first.

The court sustained an objection to the introduction by the Clerk of the Rockcastle Circuit Court of a judgment convicting the deceased of a felony in the year 1947. The conviction was for the crime of storehouse breaking and appellant argues that this evidence was competent to show that the deceased was a person of unpeaceable disposition; and that appellant, on this account, was faced with more than an ordinarily dangerous antagonist and had cause for greater fear and alarm at his hands. We are of the opinion that the mere fact that one has been convicted of storehouse breaking does not establish the fact that he would be dangerous in the circumstances shown in this case. The crime of storehouse breaking is a crime of stealth and shows that its perpetrator is a person of unsavory but not necessarily dangerous character. Undoubtedly, the general reputation of the deceased for violence is admissible in cases of this character, but, even if evidence of a single act were competent, the act offered in evidence in this case is not of the character to establish a violent disposition.

The witness, Ben Thomas, on cross-examination was asked by the Commonwealth's Attorney if he had ever been convicted of a felony. He answered in the negative. The Commonwealth's Attorney then askked him if he had not been convicted of the crime of desertion from the Army and if he had not served a sentence of eighteen months in a Federal Reformatory for that crime. An

objection to this question was sustained by the court but the court overruled a motion to discharge the jury and continue the case.

The complaint in respect to the court's ruling on this question presents a question which has given us considerable concern. Since Thomas was the only unbiased witness, and desertion from the Army is held in such loathsome regard, the mere asking of the question, if incompetent, was so highly prejudicial that the court should have set aside the swearing of the jury and continued the case. Whether the question was competent or incompetent depends on proper construction of that part of Section 597 of the Civil Code of Practice which provides that a witness may be impeached by a party against whom he is produced by showing the witness has been convicted of a felony. If desertion from the Army is a felony within the contemplation of that section of the Civil Code of Practice, the question was proper and the witness should have been required to answer it. On the other hand, if the crime does not constitute a felony within the meaning of the Civil Code of Practice, the question was incompetent.

Courts are in general accord with the statement found in Restatement, Torts, Volume 1, Chapter 5, Section 115, page 246 which reads: "A felony is à crime which is declared to be so by the statutory or common law of the jurisdiction."

KRS 431.060 defines felony as an offense punishable with death or confinement in the penitentiary. To the same effect is Section 6 of the Criminal Code of Practice. These statutory pronouncements are in respect to crimes against the Commonwealth of Kentucky; although, under the rule expressed in the Restatement, supra, our courts will recognize a crime to be a felony which is declared to be such by the statutory law of the jurisdiction wherein the crime has been committed; provided, the crime is one exclusively against the peace and dignity of the sovereignty in whose jurisdiction it was committed. Desertion from the United States Army does not constitute a crime within the jurisdiction of the Commonwealth of Kentucky. It is one which comes within the exclusive jurisdiction of the organized military forces of the United States Government. Penal laws have been enacted by the Congress

in two different codes, one of which is the Military, the other the Civil, in contradistinction to the Military. The Civil Code does not attempt to deal with the crime of desertion but declares the enticing of one to desert from the Army to be a crime punishable by confinement in the penitentiary. U.S.C.A. Title 18, sec. 1381. The Military Code declares desertion from the Army to be punishable by death or imprisonment in time of War and by any punishment, except death, in time of peace. U.S.C.A. Title 10, sec. 1530. U.S.C.A. Title 18, sec. 1 in defining offenses reads:

"Notwithstanding any Act of Congress to the contrary:

"(1) Any offense punishable by death or imprisonment for a term exceeding one year is a felony."

This definition is a part of the Civil Code; there is no similar declaration in the Military Code. In Trask v. Payne, 43 Barb., N. Y., 569, it was held that desertion from the Army was not an offense recognized as a felony by civil courts. Persons charged with violating the Military Code are tried by a court-martial. The crime is not considered to be one against the peace and dignity of the Civil Government; it is strictly one against the peace and dignity of military authority and is enforced primarily for disciplinary purposes. We believe that our Legislature intended to include in its definition of felony only such crimes as are punishable under the civil authority of the states or the union and not those with which the armed forces alone are concerned. Hence we are of the opinion that the question propounded to the witness was incompetent and, as we have observed, was so highly prejudicial to appellant's substantial rights that the court should have sustained the motion to discharge the jury and continue the case.

The same witness was asked if the deceased had not served in the Army for five years and five months. He answered that he had so heard. He then was asked by the Commonwealth's Attorney if the deceased did not receive "A Silver Star and three or four Bronze Medals." The court properly sustained an objection to this question; and, had an objection to this entire line of interrogation been made, it would have been

proper for the court to have excluded it. We are of the opinion that this error alone would not justify reversal of the case, but, since it must be reversed for other reasons, interrogation into matters of this kind will not be indulged on the next trial.

It is unnecessary for us to determine whether the court erred in excluding evidence of the reputation of the deceased for peace and quiet when offered in rebuttal. The evidence of such reputation is competent if the defendant chooses to open the door to this line of investigation, but, if such is his desire on the next trial, he will offer such testimony as evidence in chief. We cannot agree that the testimony of the parents of the deceased in respect to the latter's coming to their home immediately before he was killed for the purpose of obtaining a suit of clothes was not competent in rebuttal. It was appellant's contention that the deceased went to his home to obtain a pistol, whilst it was the contention of the Commonwealth that he went there for the purpose of getting a suit of clothes to sell to appellant. Ordinarily, the Commonwealth does not know that such a fact will be placed in issue and apparently it did not anticipate it in this case. Under the circumstances, we believe the court did not abuse its discretion in permitting this evidence to be introduced in rebuttal, but since the Commonwealth now knows that this fact may be placed in issue on the next trial, the Attorney for the Commonwealth will introduce such testimony in chief, if he desires to introduce it at all.

The argument complained of consists of two parts, the first of which is in the following words: "Incidentally, gentlemen of the jury, the witness, Ben Thomas, a life long friend of Arie's admitted on the witness stand that he was a felon and had committed a felony."

This statement was in absolute contradiction of the testimony to which we already have referred. Had the Attorney for the Commonwealth made no other improper remark, that statement would compel reversal, although it was mild in comparison with the other remarks complained of, and which are: "There is an empty chair at these old people's table (referring to the father and mother of deceased) and the bed has

been made up for the last time. James Smith was on the sands of Sicily and on the beaches of Africa fighting while Arie was peddling liquor. The hell hole that Arie Blackburn operated down there enticing these men in there while Arie was getting them drunk and taking their money and clothing, that is what Arie Blackburn did. This is a hell hole that Blackburn operated and is the kind of place that breeds murder. We tried six murder cases at the last Term of the Pulaski Circuit Court in Pulaski County three of them got life, and none of them got less than 18 years and you can stop the murder in Rockcastle County like we did in Pulaski, and I recommend that you give it to Arie Blackburn. Arie, I want to say to you that you may have sent James Smith to Hell, but if James Smith is in Hell, he will put the coal on you *Aire*, when you get there. Arie you ought to go to the electric chair and your bones ought to crack and your meat ought to fry in the electric chair. That's where you belong.''

There was no evidence that James Smith was ''on the Sands of Sicily'' or ''on the Beaches of Africa fighting'' or ''that Arie was peddling liquor''; nor was there any evidence to justify the statement that appellant operated a ''hell hole,'' or that he enticed men into his place of business, or that he got them drunk, or that he took their money or their clothing. There was no evidence to justify the statement that he operated ''the kind of place that breeds murder.'' The statement that six murder cases were tried at the last term of the Pulaski Circuit Court wherein three of the defendants were sentenced to life imprisonment and the rest of the defendants were sentenced to the penitentiary for minimum periods of eighteen years was dehors the record, had nothing whatever to do with the case, and could have been injected into the argument only for the purpose of inflaming the jury. The closing remarks of the above quoted argument exemplify the frenzy which the Commonwealth's Attorney engendered within himself, and his apparent endeavor to transmit such frenzy into the minds of the jurors. The portion of the argument complained of is inexcusable and was extremely prejudicial to the substantial rights of appellant. If prosecuting attorneys continue to indulge in arguments of this kind, we must continue to reverse convictions on such account; and, in doing so, we cannot

avoid exposing and commenting on the conduct complained of.

The judgment is reversed with directions that it be set aside and that appellant be granted a new trial, to be·conducted in conformity with this opinion.