## BLACKBURN v. COMMONWEALTH.

Court of Appeals of Kentucky.

March 28, 1952.

Edwin R. Denney, Mt. Vernon, for appellant.

J. D. Buckman, Jr., Atty. Gen., William F. Simpson, Asst. Atty. Gen., for appellee.

MOREMEN, Justice.

Appellant, Arie Blackburn, was convicted of voluntary manslaughter of James Smith and sentenced to ten years' confinement in the penitentiary. This is the second appeal of this case. The first opinion may be found in 314 Ky. 22, 234 S.W.2d 178.

The evidence produced by the Commonwealth and that produced by the appellant are in conflict concerning material issues of fact.

The Commonwealth produced one eyewitness to the homicide, Preston Moore, who testified that on the morning of December 5, 1949, he and his nephew, James Smith, drank intoxicating liquor. About noon they went to a restaurant operated by appellant and his brother, where Smith and appellant engaged in conversation about a suit of clothes which Smith desired to sell. Moore related that Smith, thereupon, left the restaurant and returned about 1:30 or 2 o'clock with a bundle under his arm when, for some reason not known to him, an argument arose between decedent and appellant. He stated that Blackburn said,

"Wait a minute"; ran back into the kitchen; returned with a pistol and, without further provocation, shot Smith.

The witnesses produced by appellant testified that Smith on his first trip to the restaurant went into the kitchen uninvited and offered appellant and Ben Thomas a drink which was refused. Whereupon, Smith addressed a time honored provocative remark to appellant who replied in kind. Thereupon, Smith said, "Arie, you've got the advantage of me, you got a gun and I have not, but Dad's got a good one. I'll go home, but I'll be back," and left the restaurant. He returned about 45 minutes later; slammed the door behind him; pulled off his jacket; put his hand in his right pocket; walked towards appellant who was standing at the end, but behind, the counter, and again cursed appellant who grabbed a pistol from under the counter and shot Smith when he was a foot or foot and a half away.

The jury accepted the testimony offered in behalf of the Commonwealth and returned a verdict of guilty.

Appellant assigned as grounds for reversal the following errors: (1) the court erred in overruling a motion to discharge the jury and continue the case when one witness testified that appellant's occupation was bootlegging; (2) the court erred in permitting the undertaker, W. H. Cox, to testify that the bullet passed through the intestines, through the liver, through the heart, through the lungs and lodged underneath the skin back of the left shoulder blade; (3) that the action of the mother of the deceased in becoming hysterical at the trial was prejudicial and, finally, (4) the argument of the Commonwealth's attorney contained prejudicial matter.

Lulu Smith, mother of deceased, was asked if she knew appellant's business, and answered, "He was bootlegging." Appellant's counsel objected to the answer and moved that the court discharge the jury and continue the case. The court sustained the objection to the answer and gave this admonition to the jury: "Gentlemen of the jury, you will not let what this witness said about bootlegging influence you in this

case." We are of opinion that this single answer to which an objection was promptly sustained was not prejudicial to the substantial rights of the accused, particularly in view of the court's proper admonition concerning its value. Epling v. Commonwealth, 233 Ky. 407, 25 S.W.2d 1022; Delk v. Commonwealth, 243 Ky. 38, 47 S.W.2d 957.

■ The undertaker, W. H. Cox, was permitted to testify, over objection of appellant, that the bullet passed through the intestines, the liver, the heart, the lungs, and lodged beneath the skin back of the left shoulder blade. Appellant admits that it is proper to show the course or range of the bullet, but urges that it is prejudicial for a witness to name the organs penetrated by the bullet and insists that this evidence was introduced solely for the purpose of inflaming and playing on the jury's sympathy. We cannot accept this view because we find nothing inflammatory or shocking in the bare mention of the various organs through which the bullet passed. The testimony had some value in proving not only the course of the bullet, but also that so many vital organs had been penetrated that instant death resulted.

■ Appellant next complains of the action of the mother of deceased who sat by the Commonwealth's attorney during the trial and who, when the clothing worn by deceased was being exhibited in order to disclose the course of the bullet, screamed, cried, and became hysterical. She was taken from the court room and returned in about ten minutes apparently composed. The appellant moved that the court discharge the jury and continue the case because of the conduct of the mother, which motion was overruled. The court immediately gave this admonition to the jury: "Now, gentlemen of the jury, this jury will not be influenced by any emotional demonstration by any one connected with this case. It has no part in the case, no part in the evidence in the case—this jury will be guided solely and alone by what they hear from the witness stand, by the facts, the physical facts and the law as I give it to them, the jury will be guided by nothing else." The foregoing admonition prevented any importance being given to it by the jury. In Taylor v. Commonwealth, 269 Ky. 656, 108 S.W.2d 645, 650, a demonstration similar to the one in this case occurred and there too the court promptly admonished the jury to disregard it. We said: "Show of emotions by relatives of the deceased in homicide cases is not unusual, and that is a matter difficult to control, since the relatives have a right to come into the courtroom, but in view of the prompt action of the court in having the women removed and his statement voicing disapproval of such outbursts, it is inconceivable that this incident could have prejudiced the minds of competent jurors or had any effect in determining a verdict." See also Stevens v. Commonwealth, 124 Ky. 32, 98 S.W. 284.

■ Appellant finally contends that the closing argument made by the Commonwealth's attorney was prejudicial in that he said, "You don't have to believe this clan of Blackburns that gathered there. I don't believe that James Smith was back in the kitchen of that restaurant, and I don't believe that he made the statements that they said he made in the kitchen when Ben Thomas and Arie Blackburn were there." In Jones v. Commonwealth, 313 Ky. 827, 233 S.W.2d 1007, 1009, it was held: "It is the prerogative of the jury to judge the evidence and the credibility of the witnesses and it may believe a single witness to the exclusion of a number of others."

The statement by the Commonwealth's attorney did no more than to inform the jury concerning its rights and we find nothing prejudicial in the statement.

■ The examination of this record discloses that appellant received a fair trial before a court that was alert to protect his rights under the law.

Judgment affirmed.