# IMPORTANT NOTICE
## <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: DECEMBER 20, 2007
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

## 2005-SC-000881-MR

LEE ROY PARTIN                                                          APPELLANT

ON APPEAL FROM McCRACKEN CIRCUIT COURT
V.                          HONORABLE CRAIG Z. CLYMER, JUDGE
NO. 05-CR-00002

COMMONWEALTH OF KENTUCKY                                    APPELLEE

### MEMORANDUM OPINION OF THE COURT

### AFFIRMING IN PART AND

### VACATING AND REMANDING IN PART

A jury convicted Lee Roy Partin of two counts of third-degree burglary; two counts of theft by unlawful taking over $300; and one count of first-degree criminal mischief, all Class D felonies. The final judgment sentenced him to twenty-five years' imprisonment. On direct appeal, we affirm these convictions, finding no merit in Partin's assertions of reversible error in (1) the introduction of evidence of uncharged bad acts consisting of threats and vulgar invective Partin directed toward his ex-wife and (2) the alleged prosecutorial misconduct consisting of comments made by the prosecutor at trial. But we vacate the sentence and remand the case to the trial court for re-sentencing because the trial court erred by failing to cap the sentence for these five Class D felonies at twenty years as required by Kentucky's sentencing statutes.

## I. FACTS.

After his divorce, Partin left the state for awhile. When he returned to pick up a Honda automobile, he discovered that his ex-wife had sold it. According to Partin, he was very angry with his ex-wife for failing to tell him that she had already disposed of the Honda when he called her from Florida to tell her that he was on his way back to Kentucky to get it. After leaving the state for a self-imposed cooling off period, Partin returned for some household furnishings the ex-wife had agreed to give him. These items were stored in a garage at the former marital residence, which had been awarded to the ex-wife.

By the time Partin returned for the furnishings stored in the garage, the ex-wife had sold the former marital residence. With the ex-wife's permission, the buyers had stored several items in the garage at the former marital residence pending the closing of the sale of the house. Several of the items stored in the garage, including some belonging to the buyers, were stolen or destroyed in two burglaries that occurred at the former marital residence before the closing.

Word of the first burglary came to the ex-wife from Partin himself, who called to tell her to go look in the garage to experience how it felt to have things taken from her. On inspection, she discovered many items missing and the tires on the buyers' vehicles slashed, one with a screwdriver stuck in it. Since she had recently changed the locks on the house, she suspected that entry into the garage had been gained through a "doggie door."

Partin testified at trial that he had used a key to enter the garage. He said that he had directed a couple of men to load items gathered for him in the garage into a U-

Haul truck. According to Partin, one of these men, Tracy, asked about taking more items from the garage. Partin claimed that he told Tracy that he was not concerned about taking more items because the ex-wife had told him to "take what he needed out of the garage." Partin denied his personal involvement in taking items from the garage. He claimed to have been in a bar when his two men actually loaded items from the garage. Partin testified that Tracy suggested that they should sell many of the items removed from the garage, to which Partin replied that the items should be stored in his U-Haul storage unit.

Sometime later, Partin's ex-wife discovered a second burglary at the former marital residence. This time, a television and several more items were missing from the garage; and a window on the buyers' truck was broken. Partin testified at trial to making a second entry into the garage using his key. He claimed to have taken Tracy with him again because he was curious about what Tracy had done after his ex-wife told him that items belonging to the buyers were taken and destroyed. Claiming he owned the television, Partin admitted that he and Tracy removed it from the garage and left it in a field.

A few months later, Partin's mother received an overdue notice addressed to Partin for rental of a U-Haul storage unit. She turned the notice over to the police, who obtained a warrant to search Partin's storage unit. The police found most of the stolen items in Partin's unit. A U-Haul employee testified at trial that Partin had rented the unit, and he did not remember Partin having anyone else with him when he rented it.

## II. No Reversible Error in Introduction of Evidence of Other Bad Acts.

Although admitting that the issue is unpreserved by a timely objection at trial, Partin claims that he was unduly prejudiced by the introduction of extensive evidence of his threats to his ex-wife and his use of foul language when talking to her. He also complains of the prosecutor's repeated mentioning of these threats in front of the jury, which included threats of extortion and murder and foul language. All of this appears in statements Partin allegedly made to his ex-wife following the burglaries. It appears that the ex-wife tape-recorded many of Partin's statements to her; others, she wrote down. On some occasions, witnesses monitored telephone calls Partin made to the ex-wife. And several witnesses testified that they overheard phone calls or heard recordings of phone calls in which Partin threatened his ex-wife.

According to Partin, some witnesses testified only concerning the threats without providing any information as to the alleged entry into the garage and theft and destruction of items there. He claims that this was improper admission of uncharged bad acts because he was not charged with terroristic threatening. He also contends that any threats or foul language he used were irrelevant to the crimes charged.

We find no reversible error given the lack of timely objection, the apparent relevance of most of this evidence, and the overwhelming evidence of Partin's guilt. In fact, we find that the content of at least some of Partin's threats and profanity was relevant to the crimes charged since Partin indicated in some of his statements that he knew where the stolen items were and could return them if he were paid enough money. And we find that the threats and profanity were probative of Partin's anger and ill will toward his ex-wife, which the Commonwealth argued was the motive underlying

4

the charged crimes. So we find no error in admitting these statements because we find they were proper evidence under Kentucky Rules of Evidence (KRE) 403 and 404. Certainly, no palpable error occurred under Kentucky Rules of Criminal Procedure (RCr) 10.26.[1]

Partin also complains about the prosecutor's mentioning Partin's status as a convicted felon in response to Partin's statement on cross-examination that he did not own a gun. But our review of the testimony at trial discloses that Partin himself first revealed to the jury his status as a convicted felon. So the prosecutor's comment clearly had no prejudicial effect.

Lastly, Partin complains that the prosecutor's closing argument unduly emphasized his threatening behavior with a statement that although the prosecutor had himself been divorced, he had not threatened his ex-wife in the manner that Partin had threatened his ex-wife. Admittedly, the prosecutor's reference to his own divorce was irrelevant and improper; but it does not rise to the level of a palpable error. As we see it, the prosecutor seemed to make this argument as a misguided attempt to focus the jury on the relevant issue of motive—Partin's intense anger towards his ex-wife. And the evidence of Partin's guilt was overwhelming.

---

[1]   RCr 10.26 (providing that relief for "palpable error which affects the substantial rights" may be granted despite lack of preservation "upon a determination that *manifest injustice* has resulted from the error." (Emphasis added.)

## III. Any Prosecutorial Misconduct Did Not Rise to the Level of Reversible Error.

Although again admitting to the issue being unpreserved by contemporaneous objection, Partin next complains that his convictions should be reversed on the basis of prosecutorial misconduct.[2]

He complains about the prosecutor repeating in opening statement a particularly obnoxious statement Partin made to his ex-wife and then telling the jurors that they could convict Partin solely based on his use of such profanity. But, as Partin admits, the prosecutor immediately recanted this remark, asking the jury to disregard it. We reject Partin's argument that this immediately retracted remark had any substantial effect on the jury's verdict given the overwhelming proof of guilt.

Partin also complains about the prosecutor's description in his opening statement of the events to be detailed in the evidence as "frightening" and "insane"; however, the prosecution sought to prove a set of facts that would be considered "frightening" and "insane" to many people. And we find no merit in Partin's complaint on this issue.

As more prosecutorial misconduct, Partin points to the prosecutor's telling the jurors in opening statement that they could sentence Partin to five years on each count. Partin is correct that we have generally held that giving the jury penalty-range

---

[2]    Partin mentions numerous statements of the prosecutor in the section of his brief regarding alleged prosecutorial misconduct, including such innocuous statements as the prosecutor asking the ex-wife's sister whether "these events were really difficult" for Partin's ex-wife. He also mentions the prosecutor asking the ex-wife "if you were to give [Partin] any items later, it's not because you had to but because you're a nice lady[,]" which appears to be an awkward attempt to clarify that the items removed from the garage had not been awarded to Partin under the divorce decree. Nonetheless, the unobjected-to suggestion that the ex-wife was a "nice lady" really was of little consequence in view of the overwhelming evidence of Partin's guilt. Partin complains of several instances of what he deems to be improper comments by the Commonwealth. In the interest of judicial economy, we will not present a detailed analysis of each purportedly improper comment. We have carefully read the briefs and reviewed the record to determine whether Partin was accorded a fundamentally fair trial in light of his allegations of prosecutorial misconduct.

information is inappropriate during the guilt/innocence phase of the trial (except for certain limited purposes such as ascertaining juror qualification during voir dire).[3] And we agree that this information was improperly discussed in opening statement. But, again, we note the lack of a contemporaneous objection; and we conclude that this was not a palpable error.[4]

Partin also complains about various comments made by the prosecutor during Partin's testimony in which the prosecutor described Partin as a "dangerous man." But when reviewing the context in which these remarks were made, it is clear that the comments do not constitute palpable error. On direct examination, Partin had described how when demanding information about the whereabouts of his Honda vehicle, he had twisted his ex-wife's hand and threatened to break her hand if she did not tell him where the Honda was. He had also described having to leave town because he was so mad at his ex-wife he was afraid he would have to kill her. He also volunteered how he had recently served time in a Florida jail on charges of contempt of court. Reacting to cross-examination, Partin became uncontrollably angry. He yelled and cursed and proclaimed that if he were left alone in a room with the prosecutor only one of them would come out of it. Given this outrageous performance on the witness stand, the prosecutor's comments about Partin's being a dangerous man simply confirmed what the jurors saw for themselves.

Partin also contends that the prosecutor was overly contentious and repetitive during cross-examination. While from our review of the trial tapes it is apparent that both Partin and the prosecutor became frustrated, it appears that at least some of the

---

[3] Norton v. Commonwealth, 37 S.W.3d 750, 752-53 (Ky. 2001).

[4] RCr 10.26.

7

repetition stemmed from Partin's obstinacy in insisting that he had already told his story on direct and was not going to answer the prosecutor's questions on cross-examination. He complains of the prosecutor's writing the word "vindictive" on a board to describe Partin; however, this is exactly the term Partin had just used to describe his feelings towards his ex-wife. We find nothing improper in writing Partin's own words on a board. He also says the prosecutor unfairly vilified him by asking whether anyone had ever told him that it is easier to keep things straight if one tells the truth. This was a fair question in light of Partin's expressed fear of contradicting himself if he answered questions on cross-examination.

Partin also complains about the prosecutor asking him about "Larry, this guy that you made up," prompting Partin to respond "who the f--- is Larry?" The prosecutor, however, apologized for mistakenly referring to Larry, instead of "Tracy" (who stole and destroyed the items in question according to Partin). It appears that the prosecutor simply made a mistake in referring to this person by the wrong name and cannot be blamed for Partin's own choice of foul language in response. As for the prosecutor's suggestion that Partin invented Tracy, this was a plausible comment based on the evidence since Partin failed to identify Tracy to police as the real perpetrator when Partin was initially accused of the crimes.

Partin also contends that the prosecutor and various court personnel can be seen laughing on the videotapes. Any instances of laughing were, however, isolated enough to escape our notice on review of the videotapes.

Lastly, Partin faults the prosecutor for describing him in closing argument as a "dangerous man" and a "thief" and asking the jurors to send Partin a message by their

verdict. Again, given Partin's angry and vulgar outbursts at trial, such descriptions of him as dangerous and a thief did not create palpable error; the descriptions were a fair comment on the evidence.[5] Especially given the lack of objection, we can find no substantial error resulting from the prosecutor's asking the jury to send a message to this particular defendant. In summary, we find no instance of prosecutorial misconduct so egregious that Partin was deprived of a fundamentally fair trial, especially since we have given prosecutors some latitude in closing argument to comment on evidence and tactics.[6]

Given the lack of substantial effect of any actual or alleged unpreserved errors, we further find no cumulative error requiring reversal of Partin's convictions.[7]

## IV. Sentence Exceeds Maximum Set by KRS 532.110.

Partin was convicted of five Class D felonies. And, as Partin's attorney argued at final sentencing, and as the trial court agreed orally at sentencing, Partin's sentence should have been capped at twenty years. Instead, the final judgment imposed a twenty-five year sentence.[8] KRS 532.110(1) provides, in pertinent part, that:

---

[5] While Kentucky courts have long disapproved of prosecutors expressing their personal opinions as to the character of others where no evidence or attempt to impeach substantiated such a personal opinion (*see, e.g.,* Jones v. Commonwealth, 313 Ky. 827, 832, 233 S.W.2d 1007 (1950)), we have afforded prosecutors wide latitude in commenting on evidence and tactics, particularly in closing argument. Stopher v. Commonwealth, 57 S.W.3d 787, 805-06 (Ky. 2001).

[6] *Id. See also* Barnes v. Commonwealth, 91 S.W.3d 564, 568 (Ky. 2002) (stating that reversal for prosecutorial misconduct in closing argument is only warranted upon contemporaneous objection, trial court's failing to provide proper admonition in response to objection, and lack of overwhelming evidence of guilt.).

[7] *See* Young v. Commonwealth, 50 S.W.3d 148, 172 (Ky. 2001) ("unpreserved claims of error cannot be resuscitated by labeling them cumulatively as 'prosecutorial misconduct.'").

[8] In Kentucky, a written judgment controls over inconsistent oral rulings by a court. Commonwealth v. Taber, 941 S.W.2d 463, 464 (Ky. 1997).

When multiple sentences of imprisonment are imposed on a defendant for more than one (1) crime, including a crime for which a previous sentence of probation or conditional discharge has been revoked, the multiple sentences shall run concurrently or consecutively as the court shall determine at the time of sentence, except that:

. . . .

(c) The aggregate of consecutive indeterminate terms shall not exceed in maximum length the longest extended term which would be authorized by KRS 532.080 for the highest class of crime for which any of the sentences is imposed.

KRS 532.080(6)(b) states that:

If the offense for which he presently stands convicted is a Class C or Class D felony, a persistent felony offender in the first degree shall be sentenced to an indeterminate term of imprisonment, the maximum of which shall not be less than ten (10) years nor more than twenty (20) years.

KRS 532.110 provides that the sum of multiple sentences cannot exceed the maximum length of imprisonment authorized by KRS 532.080; KRS 532.080 provides for a maximum term of twenty years for a persistent felony offender presently convicted of Class D felonies. Since the statutes set a maximum at twenty years' imprisonment, the trial court erred in sentencing Partin to twenty-five years' imprisonment in its final judgment. This sentence must be vacated, and this case remanded to the trial court for re-sentencing in accordance with KRS 532.110(1)(c) and KRS 532.080(6)(b).

## V. CONCLUSION.

For the foregoing reasons, we affirm Partin's convictions; but we vacate the sentence and remand to the trial court for re-sentencing in accordance with this opinion.

All sitting. All concur.

10

COUNSEL FOR APPELLANT:

Shannon Dupree
Assistant Public Advocate
Department of Public Advocacy
100 Fair Oaks Lane, Suite 301
Frankfort, KY 40601


COUNSEL FOR APPELLEE:

Gregory D. Stumbo
Attorney General of Kentucky

William Robert Long, Jr.
Assistant Attorney General
Office of the Attorney General
1024 Capital Center Drive
Frankfort, KY 40601-8204