## Jones v. Commonwealth

November 3, 1950.

Ray C. Lewis, Judge.

Lewis & Weaver and William Rice for appellant.

A. E. Funk, Attorney General, Zeb. A. Stewart, Assistant Attorney General, Sylvester V. Little, Commonwealth Attorney, for appellee.

JUDGE LATIMER—Affirming.

Appellant Dan Jones, was indicted and tried for murder. He was convicted of voluntary manslaughter with punishment fixed at confinement in the penitentiary for 15 years. He is here urging reversal on these grounds: (1) The verdict is against the law and the evidence. (2) The court erred in failing to sustain defendant's motion to set aside the swearing of the jury. (3) The court erred in refusing to permit the introduction of. competent evidence offered by the defendant. (4) Misconduct of one of the attorneys for the Commonwealth.

The killing occurred on Sunday afternoon, November 6, 1949. The record discloses that the deceased, Bill Parker, operated a country store in Clay County. It appears that some feeling existed between Parker and Jones, occasioned by Parker's act of filling up a well from which the Jones family and some of Parker's children and grandchildren had been using water. On this Sunday afternoon, appellant and his son, Carlie, a lad about 13 years of age, appeared in front of the Parker store. While in front of the store, Dave Hollin passed

and spoke. Jones inquired of him if he was going into the store. Upon receiving an affirmative answer, Jones then said to him: "Will you tell Bill Parker there is a man out here wants to see him or to speak a word to him." This message was conveyed to Parker. Immediately Bill Parker, in shirt sleeves and apparently unarmed and nothing in hand, went out to the front of the store. In three or four minutes he came staggering back into the store with these words on his lips: "Lord have mercy, Dan Jones has killed me." Blood was streaming from his neck. He had a knife wound about 1½ inches long just behind the jugular vein; one cut on the left arm about 2 inches above the wrist; one on the left side of his stomach about 4 or 5 inches in length; and one on the back a little to the right of the spine. He was rushed to Dr. Burner's office in Manchester, where he died very shortly after arriving.

Appellant's version of the story is that on the evening of the killing, he and his son, Carlie, went to Bill Parker's store; that on the way down to the store they met up with Letch White, who went along with them; that he went for the purpose of seeing Bill Parker to ask him to help pay for cleaning out a partnership well; that he and Bill Parker had never had any trouble before that time; that when he reached the store he asked Dave Hollin to tell Parker to come on the outside; that when Bill Parker did come to the outside he informed him that he was going to have Lee Smith clean out the well and asked Parker if he would share the expense with him; that Parker then said: "God damn you, I will clean you out," grabbed appellant by the shirt collar and hit him with a black jack; that at the time appellant had done nothing to Parker; and that when Parker hit him with the black jack, appellant took his pocket knife from his pocket and started cutting.

A number of eyewitnesses testified in the case, both for the Commonwealth and for the defendant. There is some conflict in the testimony. Appellant and his son, Carlie, testified that Parker hit Jones with a black jack. Others testified that they saw Parker hit Jones with something but didn't say what it was. Others testified that there was just mere scuffling and shoving going on. Some testified that they saw nothing in Jones' hand. The knife, with which Parker was stabbed, was exhibited to the jury. No black jack was found. The testimony of

Parker's son was that his father was entirely unarmed and had no black jack or any other instrument on or about his body.

Under the above the jury could easily have believed that this cutting and wounding was without justification or excuse and not in necessary or apparently necessary self-defense. Even though it be true, as testified by some of defendant's witnesses, that Parker struck the first lick with his fist, appellant had the right only to use such force as was reasonably or apparently necessary to repel the attack. On this question we find in Roberson's Criminal Law and Procedure, Section 301, these words: "Thus, if a person who is assailed by another with fists only, killed that other with a deadly weapon, it is not excusable self-defense, but murder. No other danger than that of death or grievous bodily harm will excuse one for taking the life of another. The law, out of a sacred regard for human life, does not permit it to be taken upon slight occasion, or to prevent the danger of some slight or trifling bodily harm." See also Ware v. Commonwealth, 140 Ky. 534, 131 S.W. 269, and Short v. Commonwealth, 4 S. W. 810, 9 Ky. Law Rep. 255. Even though appellant were correct in his claim that there is a preponderance of the evidence in support of his theory of self-defense, it must be remembered that guilt is not to be determined by the numerical number of witnesses. It is the prerogative of the jury to judge the evidence and the credibility of the witnesses and it may believe a single witness to the exclusion of a number of others. When an accused admits the stabbing and wounding but pleads self-defense, he has the burden of producing testimony that this defense is well founded. Jeter v. Commonwealth, 268 Ky. 285, 104 S. W. 2d 979; Wireman v. Commonwealth, 268 Ky. 339, 104 S. W. 2d 1083; and Banks v. Commonwealth, 277 Ky. 647, 126 S. W. 2d 1122. We conclude the evidence amply supports the verdict.

The second question raised arises out of the testimony of Simon Stewart, who stated that he was in Parker's store on this Sunday afternoon; that he saw Dave Hollin come into the store and tell Bill Parker that Dan Jones wanted to see him a minute; that Bill Parker went out immediately and in three or four minutes later as he (Stewart) started out the door, he met Bill Parker coming in with blood coming from his neck; that he saw

two men running away. He was then asked this question: "Did Parker make any statement to you when you met him?" Objection was interposed but the witness answered: "He said 'Lord have mercy, Dan Jones has killed me.'" At that point in the trial, appellant moved the court to set aside the swearing of the jury and continue the case. This motion was overruled but the court did admonish the jury not to consider the statement for any purpose. As we see the matter, there might have been some merit in appellant's contention had there been a question as to who killed Parker. But here, we have an admitted cutting and wounding and a plea of self-defense. Even though the last were true, it appears to us that this statement is so close to the act as to become a part of the res gestae and the answer should have been admitted. Norfleet v. Commonwealth, 33 S. W. 938, 17 Ky. Law Rep. 1137. In any event, if there was error, it was, undoubtedly, cured by the admonishment of the court. There is no merit here.

It is next contended that the court erred in refusing to permit the defendant's witnesses to testify to a statement made by Carlie Jones, the son of appellant, while the difficulty was going on. Carlie Jones, when asked what he did, answered: "I hollered and told him not to do that. I said 'Bill don't hit Daddy any more.'" The defense undertook to prove by other witnesses that they heard Carlie Jones make the statement: "Don't do that Bill. Don't hit Daddy with that." It will be noted first that the son, Carlie, had testified as to what he said. There was no denial of this. Such testimony could only be an attempt to bolster this witness. Outcries of a participant during the progress of a difficulty have been considered a part of the res gestae but statements of those who are mere bystanders, even though spontaneous and unpremeditated, are inadmissible as being hearsay and opinion evidence. See Howard v. Commonwealth, 227 Ky. 142, 12 S. W. 2d 324, and the many cases cited therein.

It is lastly contended that Mr. John Lyttle, former County Judge of Clay County who was employed to assist the Commonwealth, was guilty of misconduct in his closing argument to the jury. It is insisted that because Mr. Lyttle had been County Judge for 8 or more years preceding this trial, he was a man of great influence. It is shown by affidavit, in support of motion

and grounds for new trial, that Mr. Lyttle held up **his** hand, as though under oath, and said "that he had been acquainted with Carter Sandlin and his family for **at** least 15 years and that if this Court would swear **him** on that day he would have to swear that he could **not** believe a word that the Sandlins said." We quite **agree** with appellant that this was going too far. There was **no** evidence upon which to base such a statement. The Sandlins had testified for the defendant. No attempt had **been** made to impeach them. The statement made in the **manner** above was in effect testimony that the Sandlins could not be believed. However, we run into this **difficulty**. The record does not show that any objection **was** made to this argument nor any step taken to set **aside** the swearing of the jury. Had this matter been **taken** advantage of seasonably we would be inclined to **hold** that the statements made by Mr. Lyttle constituted **reversible** error. In view of the fact that this record **discloses** no such objection, we cannot entertain it.

The judgment is affirmed.