Alan David MANNING, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 1999–SC–0196–MR.

Supreme Court of Kentucky.

April 20, 2000.

Rehearing Denied Aug. 24, 2000.

Nancy Oliver Roberts, Bowling Green, for appellant.

A.B. Chandler III, Attorney General, Courtney J. Hightower, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, for appellee.

GRAVES, Justice.

Appellant, Alan David Manning, was convicted in the Warren Circuit Court on one count of first-degree manslaughter for the death of Earl Manning, and one count of being a first-degree persistent felony offender.  The evidence consisted of a statement Appellant made to his common law wife, Lunell, and of circumstantial evi-

dence from shell casings. He received a life sentence and appeals to this Court as a matter of right. We affirm.

Appellant is the victim's adopted son. He and his common law wife, Lunell, and her son, Scotty Roddy, were living on Earl Manning's farm. Appellant was to inherit the farm upon the death of Earl Manning. However, on November 22, 1998, Earl Manning offered to sell the farm to Allen Martin.

On November 23, 1998, at approximately 9:30 p.m., Appellant arrived at friends, Kenneth and Carolyn Posten's residence. Appellant asked the Postens if shooting someone in the forehead and in each temple would be sufficient to cause death. The Postens said it probably would, and Appellant mumbled that is what he would do. Appellant thereafter drove to the victim's home and killed him. Later, Appellant described in detail to his common law wife, Lunell, how he grabbed the victim by the shirt collar and threw him to the ground. Appellant then shot him in the head three times. When Appellant heard some gurgling, he shot the victim in the head two more times. Appellant then stabbed the victim five times in the chest. Appellant stated that he heard the knife blade hit the floor while he was stabbing the victim.

The following day, November 24, 1998, Roddy, Appellant's stepson and the victim's step-grandson, returned to the residence and discovered the victim. Because the phone lines had been cut, Roddy went across the street and had a friend phone 911.

Ronnie Freels, a Kentucky State Police forensics expert, testified that the shells found at Appellant's residence and the shells found at the victim's residence, near the body, were fired from the same gun. He further stated that the victim was killed with the same gun that was test fired at Appellant's residence.

## I. PRIOR INCONSISTENT STATEMENT

Appellant confessed to his wife, Lunell Manning, that he murdered Earl Manning. His wife subsequently repeated everything Appellant told her to Detective Cliff Meeks of the Bowling Green Police Department. Prior to trial, defense counsel, who also represented Lunell, moved to preclude her testimony because of the marital privilege. The trial court ruled that the marital privilege was unavailable in the absence of a valid marriage. Defense counsel then moved *in limine* to preclude calling Lunell because she intended to assert her Fifth Amendment privilege against self-incrimination. The trial court ruled there was also no Fifth Amendment privilege since Lunell was not incriminating herself by testifying about what Appellant told her regarding the victim's death.

When Lunell testified at the hearing on Appellant's *in limine* motions, she denied any memory of what Appellant told her, or giving a statement to Detective Cliff Meeks. Her video statement to Detective Meeks was played and Lunell stated that she still didn't recall the conversation and that the video did not refresh her recollection.

At trial, Lunell similarly testified that she could not recall what Appellant had told her regarding the death of the victim. Additionally, Lunell stated that she only vaguely remembered speaking with Detectives Meeks and Bratcher. Lunell didn't deny her statements, but claimed that she just did not remember them. Lunell testified that at the time she gave her statement she had failed to take her medicine for several days, and could remember neither Appellant's confessing to the killing nor her giving an interview to the police. After the Commonwealth laid a foundation pursuant to KRE 613, the video of her statement to the detective was admitted at trial as a prior inconsistent statement. *United States v. Owens*, 484 U.S. 554, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988).

An accused's Sixth Amendment right to confront the witnesses against him is a fundamental right which is made obligatory on the states by the Fourteenth Amendment. *Dutton v. Evans,* 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970). The Confrontation Clause of the Sixth Amendment envisions a personal examination and cross-examination of the witness, in which there is not only an opportunity to test the recollection and sift the conscience of the witness but also to compel the witness to stand face to face with the jury in order that they may look at him and judge by his demeanor whether his testimony is worthy of belief. *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). However, the constitutional right of confrontation does not prohibit the introduction of all hearsay evidence. *Dutton, supra.*

The Court of Appeals specifically addressed this issue in *Wise v. Commonwealth,* Ky.App., 600 S.W.2d 470 (1978), which involved an assault in a tavern in Louisville. The evidence came primarily from out-of-court statements given to the police by two nineteen-year-old girls. At trial, the witnesses had a lapse of memory, and the trial court allowed the prior statements by the witnesses to be admitted as evidence. On appeal, the Court of Appeals held that the statements were properly admitted. *Id.* at 472. Citing *Jett v. Commonwealth,* Ky., 436 S.W.2d 788 (1969), the Court determined that the prior statements were admissible as substantive evidence, reasoning that no person should have the power to obstruct the truth-finding process of a trial and defeat a prosecution by saying, "I don't remember." *Id.* The Court concluded that it is within the trial court's discretion to admit the contradictory evidence. *Id. See also Brock v. Commonwealth,* Ky., 947 S.W.2d 24 (1997) (Prior inconsistent statement can be used not only to attack the credibility of declarant, but also as substantive evidence); *Newkirk v. Commonwealth,* Ky., 937 S.W.2d 690 (1997) (Out-of-court statements by alleged ten-year-old victim of rape and sodomy to investigating police officers and the doctor who examined the victim at the hospital were admissible in view of the victim's inability to recall specific details during her testimony at trial).

Here, the trial court was correct in admitting the video of Lunell's prior inconsistent statement, as the Confrontation Clause was satisfied by the opportunity for cross-examination of Lunell at trial.

## II. INDIVIDUAL VOIR DIRE

Appellant argues that the trial court erred in denying individual voir dire of the jury since jurors might have been familiar with the driving times from the area of the crime scene in Warren County to Bowling Green.

Conducting voir dire is within the discretion of the trial court. *Thompson v. Commonwealth,* Ky., 862 S.W.2d 871 (1993). Appellant never asked the panel any questions regarding driving times during voir dire. As such, the trial court did not abuse its discretion in denying Appellant's motion for individual voir dire.

## III. ADMISSION OF POLICE REPORT

Appellant argues that the trial court erred by denying admission of Officer Tom Leach's police report which contained information regarding a white female who approached Officer Leach with details regarding the victim's death. Appellant's defense was that the death of the victim was related to the death of Pedro Alexander, who was murdered the next day. Accordingly, Appellant sought access to the police report, as well as the investigative file on Nick Murell, who had entered a guilty plea to the murder of Pedro Alexander.

This report was not admissible under KRE 803(6), the business records exception to the hearsay rule. In his treatise *The Kentucky Evidence Law Hand-*

*book*, § 8.70, p. 472 (3rd Ed.1993), Professor Robert Lawson, in footnote 577, allows for the possibility that police reports might be admissible under the business records exception. However, under the Kentucky Rules of Evidence, if a report is admissible pursuant to KRE 803(6), then all parts of the report must be admissible under some hearsay exception. If a particular entry in the record would be inadmissible for another reason, it does not become admissible just because it is included in a business or public record. Moreover, hearsay within hearsay, i.e. "double hearsay," is inadmissible unless each part of the combined statements conforms with a recognized exception to the hearsay rule. *Prater v. Cabinet for Human Resources*, Ky., 954 S.W.2d 954, 958–959 (1997). Consequently, anything in the police report regarding what an unidentified white female may have told Officer Leach, or what anyone else may have said, would be inadmissible, as these statements do not qualify for admission under any other hearsay exception. Appellant was not prejudiced by the trial court's ruling since the bulk of the report was inadmissible under the reasoning in *Prater*.

During cross-examination, Appellant was allowed to ask about Officer Leach's conversation with the female who allegedly had information regarding the victim's death. However, Appellant was not allowed to ask what she said to the officer. Detective Meeks testified that he pursued the information received by Officer Leach, and from his investigation, Detective Meeks concluded that the victim's death was not related to Pedro Alexander's murder.

## IV. FIRST–DEGREE PERSISTENT FELONY OFFENDER CHARGE

■ Appellant had at least two prior felonies upon which to base a first-degree persistent felony offender conviction. The provisions of KRS 532.080 require two prior felony convictions, and that completion of the sentence of any of the previous convictions had to have been completed within five (5) years of the date of the commission of the felony for which Appellant is being convicted. These provisions were satisfied.

Evidence was introduced that Appellant was, at the time of conviction, at least twenty-one (21) years old. Ann Moats, a clerk in the Warren County Courthouse, testified that Appellant had been convicted of five previous felonies. Moats also testified that Appellant was over the age of eighteen (18) when these prior felonies were committed. Appellant's argument that both of the prior felony convictions had to be within five (5) years is refuted by the holding in *Howard v. Commonwealth*, Ky.App., 608 S.W.2d 62 (1980). In *Howard*, the Court of Appeals held that the persistent felony offender statute, KRS 532.080, only requires that completion of service of sentence or discharge from probation or parole on any, not each, of the prior convictions shall have occurred within five (5) years of the commission of the instant offense. *Id.* at 64.

## V. JURY INSTRUCTIONS

Finally, Appellant argues that the trial court erred in instructing the jury on first-degree manslaughter. He contends that the Commonwealth failed to prove by any definite, non-speculative evidence that he was suffering from extreme emotional disturbance at the time of the victim's death.

■ A trial court is required to instruct on every theory of the case reasonably deducible from the evidence. *Ragland v. Commonwealth*, Ky., 421 S.W.2d 79, 81 (1967); *Callison v. Commonwealth*, Ky.App., 706 S.W.2d 434 (1986) (In a criminal case, it is the duty of the court to prepare and give instructions on the whole law. This general rule requires instructions applicable to every state of [the] case covered by the indictment and deducible from or supported to any extent by the testimony.)

In the case at bar, the evidence indicated that Appellant was scared that the victim, his father, was about to sell the farm and disinherit him. Also, the evidence tended to show that the victim controlled Appellant and molested him as a child. Detective Meeks testified that the first thing Appellant said when he questioned him regarding the victim's death was, "you know he molested me." Appellant also introduced testimony that the victim had allegedly touched other children inappropriately. Keith Fishburn and Tuanda Fishburn testified about the victim's molestation of their young daughter. However, prior to their testimony, the trial court ruled that while providing a motive for others to want to kill him, it also provided Appellant with a motive. Finally, the testimony regarding the nature of the victim's wounds indicated that someone who was emotionally charged inflicted such wounds. This evidence provided a solid basis for the jury's finding that Appellant was acting under extreme emotional disturbance when he killed the victim. The instruction provided to the jury was proper.

For the reasons set forth, the judgment and sentence of the Warren Circuit Court are affirmed.

All concur.