# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

# Supreme Court of Kentucky



2005-SC-000864-MR

DATE 1/22/09 EliAGravitt.D.C

SIMON OLIVER                                                                                    APPELLANT


|                          |                                        |
|--------------------------|----------------------------------------|
| V.                       | ON APPEAL FROM PERRY CIRCUIT COURT     |
|                          | HONORABLE WILLIAM ENGLE, III, JUDGE    |
|                          | NO. 04-CR-000180                       |


COMMONWEALTH OF KENTUCKY                                                          APPELLEE


## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

A circuit court jury convicted Simon Oliver of multiple crimes, including the murder of his ex-wife, for which the trial court sentenced him to thirty years' imprisonment. We affirm.

## I. Background

During an argument with his ex-wife, Sandra, Oliver shoved his young daughter, causing her to topple down an embankment outside his apartment. The argument apparently continued while Oliver and Sandra retrieved their daughter. At some point during that argument, Oliver struck Sandra on the side of the face with his hand. Later, while Oliver was in the bathroom of his apartment cleaning up his daughter, Sandra allegedly hit him in the head with a baseball bat. Oliver grabbed the bat from Sandra and struck her several times. Authorities later found Sandra's lifeless body in the bathtub of Oliver's apartment, her head underneath the faucet and her mouth full of water. Although Oliver contends that he laid Sandra in the bathtub to awaken her, the

authorities testified that Sandra had been strangled and water had been run down her throat.

After his fight with Sandra, Oliver drove away with his daughter. At one point, Oliver drove past or around a police roadblock. After stopping on a bridge, Oliver emerged from his vehicle holding his daughter. Oliver walked to the edge of the bridge while continuing to hold his daughter. Oliver contends that he voluntarily surrendered his daughter to the police before he jumped off the bridge into the river below. But the authorities testified that they had to pull the young child away from Oliver before he jumped. A state trooper pulled Oliver from the river.

Oliver was later interviewed both at the hospital and at the police station. Officers later testified that Oliver was awake, alert, and coherent during the interview. Oliver freely admitted killing Sandra. In fact, one officer testified that Oliver told him that Sandra's death was "cold-blooded murder."

Oliver was indicted for one count of murder, one count of attempted murder, first-degree fleeing or evading police, three counts of first-degree wanton endangerment, one count of first-degree assault, and one count of kidnapping. The charges against Oliver proceeded through a multi-day jury trial, during which Oliver's main defense was a claim of insanity. The jury found Oliver guilty of murder, first-degree fleeing or evading police, three counts of first-degree wanton endangerment, one count of fourth-degree assault, and one count of kidnapping. The jury found Oliver not guilty of attempted murder. The jury recommended that Oliver be sentenced to thirty years for the murder conviction, one year for the fleeing or evading police conviction, three years each on the three wanton endangerment convictions, twelve months for the fourth-degree assault conviction, and ten years for the kidnapping conviction, with all of those

sentences to run concurrently. The trial court sentenced Oliver in accordance with the jury's recommendations, after which Oliver filed this matter-of-right appeal.

## II. Analysis

Oliver raises five issues in his appeal, all related to the trial proceedings. He argues that the trial court erred by (1) failing to direct a verdict of acquittal, (2) refusing to instruct on self-defense, (3) excluding a hearsay statement allegedly made by the victim, (4) failing to grant a mistrial because of the allegedly improper testimony of a deputy coroner, and (5) failing to include the correct presumption of innocence instruction as it pertains to manslaughter. We reject all of Oliver's arguments.

### A. Oliver Was Not Entitled to a Directed Verdict.

Oliver contends that he was entitled to a directed verdict on all offenses because his mental illness rendered him either not criminally responsible[1] or mentally ill. See KRS 504.020(1) ("A person is not responsible for criminal conduct if at the time of such conduct, as a result of mental illness or retardation, he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law.").[2] The Commonwealth responds by arguing that this issue is not preserved for review because Oliver did not specifically move for a directed verdict based on his mental illness. The Commonwealth contends to the contrary that Oliver made a generic motion for a directed verdict based on an alleged insufficiency of evidence. Oliver's reply brief does not address this issue.

---

[1] See Kentucky Revised Statutes (KRS) 504.020(1) ("A person is not responsible for criminal conduct if at the time of such conduct, as a result of mental illness or retardation, he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law.")

[2] See KRS 504.130; 504.150.

3

Oliver's failure to articulate in the trial court the same rationale for his entitlement to a directed verdict that he now pursues on appeal makes preservation of this issue highly questionable.[3] But Oliver's argument fails even if we assume for argument purposes that he properly preserved the issue.

We have made it clear that a defendant relying upon an insanity defense "bears the risk of not persuading the factfinder that he was in fact insane at the time of the incident."[4] So the issue in determining whether someone relying upon an insanity defense was entitled to a directed verdict is "whether it would be clearly unreasonable for a jury to find against the defendant on the issue of insanity."[5] Under that stringent standard, Oliver's contention that he was entitled to a directed verdict must fail.

Oliver presented a substantial amount of evidence to support his claim of being not criminally responsible for the crimes in issue because of his mental illness. The most important evidence supporting Oliver's insanity defense was the expert testimony of Dr. Frank DeLand, a psychiatrist from the Kentucky Correctional Psychiatric Center. Dr. DeLand testified that Oliver was psychotic and that his psychosis rendered him not criminally responsible for the crimes at issue.

---

[3] See, e.g., Daniel v. Commonwealth, 905 S.W.2d 76, 79 (Ky. 1995) (applying Kentucky Rules of Civil Procedure (CR) 50.01 to criminal case and holding that defendant's motion for a directed verdict was not preserved for appellate review because the defendant had not specifically stated the grounds for his motion for a directed verdict to the trial court).

[4] Port v. Commonwealth, 906 S.W.2d 327, 330 (Ky. 1995).

[5] Id.; see also Commonwealth v. Benham, 816 S.W.2d 186, 187 (Ky. 1991) ("On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.").

4

The Commonwealth, however, introduced the testimony of several police officers who interacted with Oliver soon after he killed Sandra. Their testimony indicated that Oliver appeared alert and coherent and did not exhibit behavior that would indicate insanity. And the jury was able to hear Oliver's own voice as he calmly recited the grisly account of the killing via a recorded interview the police had made. Finally, an officer testified that the local hospital where Oliver was taken after having been pulled from the river did not refer Oliver for psychiatric care.

Under our settled precedent, the Commonwealth was not required to present expert testimony of Oliver's sanity to counter Dr. DeLand's expert opinion evidence.[6] "Rather the issue . . . is whether the evidence presented on the record, inclusive or exclusive of expert testimony, was sufficient to present a jury issue, thereby defeating appellant's directed verdict motion."[7] Although the expert testified differently, the lay testimony presented by the Commonwealth indicating that Oliver did not appear to be behaving irrationally shortly after he killed Sandra was enough to submit the issue of Oliver's insanity or mental illness to the jury. We conclude, therefore, that the trial court properly denied Oliver's motion for a directed verdict.[8]

---

[6]  Port, 906 S.W.2d at 330 (quoting Wiseman v. Commonwealth, 587 S.W.2d 235, 237-38 (Ky. 1979), for the proposition that "[i]t is not necessary that there be a battle between the experts as to the sanity of the accused").

[7]  Id. at 330.

[8]  See id. at 331 (finding that among other matters, police testimony that defendant was acting rationally when apprehended was enough to defeat a directed verdict motion based on insanity); Wiseman, 587 S.W. 2d at 237 (holding that lay testimony that defendant was not acting bizarrely in the hours shortly before killing his wife was sufficient to defeat motion for directed verdict based on insanity, even though three experts testified that defendant lacked substantial capacity to conform his conduct to the law or to appreciate the criminality of his conduct).

5

## B. Oliver Was Not Entitled to a Self-Defense Instruction on the Murder Charge.

Oliver argues that the trial court erred by refusing to instruct the jury on self-defense to the murder charge, principally because of Oliver's own testimony that Sandra had hit him in the head with a baseball bat immediately before he wrestled the bat from her hands and used it to bludgeon her. Oliver contends that he tendered a self-defense instruction to the trial court during a discussion of jury instructions that was held in-chambers just before Oliver took the stand to testify in his own defense. The Commonwealth counters with the argument that this issue is not properly preserved because Oliver failed later to mention the proposed instruction again after Oliver testified or to raise further objection to the lack of a self-defense instruction.

Kentucky Rules of Criminal Procedure (RCr) 9.54 governs jury instructions. Subsection (2) of that rule provides that no party may object to a trial court's failure to give an instruction "unless the party's position has been fairly and adequately presented to the trial judge by an offered instruction . . . ." In the case at hand, the Commonwealth does not dispute Oliver's contention that he tendered a self-defense instruction to the trial court. Under the plain language of RCr 9.54(2), Oliver was not required to do more in order to preserve this issue for appellate review. Although not strictly required to preserve the issue for appellate review, better practice would certainly have been for Oliver to have again requested a self-defense instruction at the close of the evidence. RCr 9.54(2) does not require a party to tender a second or a renewed objection to instructions. After all, in the final analysis, the burden falls upon the trial court independently to evaluate (or, in circumstances such as these, reevaluate) what instructions are proper at the close of all the evidence. So we conclude that Oliver sufficiently preserved the self-defense instruction issue.

6

Obviously, Oliver was the only eyewitness who could testify about the circumstances surrounding Sandra's death. According to Oliver's testimony, he was in the bathroom attempting to clean up his daughter when Sandra hit him with the bat. Toward that end, one officer testified that Oliver had a small abrasion or contusion above one eye. Oliver further testified that he grabbed the bat from Sandra and struck her repeatedly with it. Oliver characterized his actions as having been taken in self-defense.

The evidence, however, showed that the victim had been hit in the head multiple times, that she had marks on her throat showing she was choked, and that water had been run down her throat in the bathtub. In fact, the medical examiner testified that the victim's death was the result of blunt force trauma to the head and drowning. In his own statement to the police, Oliver claimed that while the victim hit him once with the bat, he admitted taking the bat and striking her "pretty hard" seven or eight times. These blows were to the back of her head. There was evidence that after he beat her into unconsciousness, he choked her and put her in the bathtub, where he ran water into her mouth causing her to drown. There was no evidence of a struggle in the apartment. Oliver even told one of the officers at the scene, "It's cold-blooded murder, I killed her."

Under our precedent, a trial court has a duty to instruct the jury on the whole law,[9] including every theory of the case deducible from,[10] or supported to any extent by, the evidence.[11] And this duty includes giving an instruction on any lawful defense or

---

[9] See, e.g., Lee v. Commonwealth, 329 S.W.2d 57, 60 (Ky. 1959).

[10] Manning v. Commonwealth, 23 S.W.3d 610, 614 (Ky. 2000).

[11] Thomas v. Commonwealth, 170 S.W.3d 343, 349 (Ky. 2005).

lesser-included offense supported by the evidence.[12] So our task as a reviewing court is to determine if the evidence presented at trial supported the giving of a self-defense instruction.

The trial court determined that it was not reasonable to believe that Oliver thought he was justified in using that much force. The court obviously felt that Oliver could not make a reasonable case from his own point of view that he believed he was acting in self protection given the extreme nature of the acts he committed, and determined that a self-protection instruction was not supported by the evidence. Defense counsel did not object to the ruling.

While it may be the better practice in cases like this to give the self-defense instruction, upon appellate review we cannot say that the trial court abused its discretion under these facts, especially when one considers that Oliver took the bat away from the victim, totally disarming her, before proceeding to beat her senseless with it and then to choke and to drown her. Self defense requires that the claimant believe his use of force is necessary to repel the <u>imminent</u> use of force by the other person.[13] As Professors Fortune and Lawson have stated, "no amount of defensive force can be employed against threats that have passed or assailants who have been subdued."[14] The danger from the initial assailant must be imminent. At the point when Oliver disarmed the victim, he was no longer in a position to claim that he was meeting force with force, appropriate or not, but rather he was using force <u>after</u> force. The "imminent danger" had subsided, and Oliver was no longer privileged to employ force in his own

---

[12]  <u>Id.</u>

[13]  KRS 503.050.

[14]  Robert G. Lawson & William H. Fortune, <u>Kentucky Criminal Law</u> § 4-2(b)(4), at 139 (1998).

8

defense. Consequently, the trial court did not abuse its discretion in failing to give a superfluous self-protection instruction.

Moreover, even assuming that some force on his part might have been justified, the force used in response must be only that which is necessary. Ordinarily, such a situation would call for a self-defense instruction combined with a wanton- or reckless-belief instruction as allowed under KRS 503.120(1).[15] But given the evidence in this case, no reasonable jury would believe that Oliver thought he needed to hit the victim repeatedly with the bat and then choke her and drown her. No reasonable jury would have believed the amount of force Oliver employed was necessary or appropriate.[16] This in turn means that the verdict returned by this jury was not tainted by the lack of a self-defense instruction—"the guilty verdict actually rendered in this trial was surely unattributable to the error"[17]—meaning any error would have been harmless.[18]

### C. The Trial Court Did Not Abuse its Discretion When it Refused to Allow Testimony About Sandra's Suspicion that Oliver Was Mentally Ill.

At trial, Oliver's supervisor was asked if he had spoken to Sandra in the days immediately before her death and whether Sandra had expressed concern for Oliver. The Commonwealth successfully objected on hearsay grounds to Oliver's supervisor being able to testify about statements allegedly made by Sandra. The supervisor then

---

[15]  See Commonwealth v. Hager, 41 S.W.3d 828, 842 (Ky. 2001).

[16]  See Jones v. Commonwealth, 313 Ky. 827, 830, 233 S.W.2d 1007, 1009 (Ky. 1950) (holding that someone struck by another's fist only had the right to use such force as reasonably necessary to repel the attack, meaning that person did not act in self-defense when he used deadly force in response to being struck with a fist).

[17]  Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993).

[18]  See Emerson v. Commonwealth, 230 S.W.3d 563, 570 (Ky. 2007) (noting that an error is harmless when there is "no reasonable possibility that it affected the verdict").

testified by avowal that he had met with Sandra and Oliver not long before Sandra's death. According to the avowal testimony, the supervisor had advised Oliver to see a doctor, to which Oliver replied that he had been to a doctor who had told him to get his liver checked. Sandra then allegedly told Oliver that "it's not your liver we are worried about. It's your head." Oliver contends that the trial court erred by excluding Sandra's statement of concern about Oliver's mental health because that statement would have buttressed Oliver's insanity or mental illness defense.

Generally, hearsay is not admissible.[19] Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."[20] Oliver does not suggest that Sandra's alleged statement is not hearsay. Rather, Oliver insists that the statement is admissible under the hearsay exception set forth in KRE 803(3) for statements of "the declarant's then existing state of mind, emotion, sensation, or physical condition . . . ." The statement, however, does not relate the state of mind of Sandra (the declarant). In fact, the statement does not relate any person's state of mind.

Oliver also argues that the statement was admissible under KRE 803(1) as a present sense impression. That rule, however, requires that the statement "describe[e] or explain[] an event or condition [and be] made while the declarant was perceiving the event or condition, or immediately thereafter." Sandra's statement, however, was not such a description or explanation; rather, it was an insult aimed at Oliver. At best, the statement could be read as one describing Oliver's alleged mental illness, but such a statement does not fall under the rule because it does not relate to a direct perception,

---

[19] Kentucky Rules of Evidence (KRE) 802.

[20] KRE 801(c).

10

but rather a judgment or diagnosis (regardless of whether Sandra was qualified to make it) requiring evaluation of Oliver's mental state. Simply put, the statement is too far removed from Sandra's perception to allow it to be a present sense impression.

Even assuming that introduction of the statement under either rule was a close call, rulings on the admissibility of evidence may be reversed only if the ruling constitutes an abuse of discretion.[21] Oliver cites no case law to support his proposition that the statement was admissible under KRE 803, or that the trial court abused its discretion in keeping the statement out.

### D. The Trial Court Did Not Err When it Refused to Grant a Mistrial Because of the Deputy Coroner's Incorrect Testimony.

Deputy county coroner Clayton Brown prepared a coroner's report of Sandra's death. Page two of Brown's report says that there was blood and brain matter on the back of Sandra's head. Brown was called as a witness on behalf of the Commonwealth, and his report was displayed to the jury without objection on an overhead projector.[22] In his testimony, Brown stated without objection that Sandra's skull was cracked and that her hair was wet with blood and brain matter. Oliver did not object until the Commonwealth asked a follow-up question about what happens when a skull is fractured. Oliver then objected that Brown was not a medical expert and that the medical examiner's report did not indicate that Sandra's skull was fractured. The trial court overruled the objection.

At a later in-chambers conference, the trial court remarked that Brown's testimony was troubling because it was inconsistent with the medical examiner's report.

---

[21] Muncy v. Commonwealth, 132 S.W.3d 845, 847 (Ky. 2004).

[22] The videotape of the trial does not show the projector screen upon which Brown's report was shown to the jury.

11

Oliver argued that the Commonwealth should not have intentionally presented inaccurate testimony. The tone of the argument of counsel at that in-chambers conference turned hostile as the Commonwealth's attorney expressed personal resentment at what he perceived to be Oliver's counsel's claim that the Commonwealth had suborned perjury. Following a well-timed overnight recess, the trial court eventually overruled Oliver's objections to Brown's testimony and denied Oliver's motion for a mistrial. Brown's testimony resumed, whereupon he testified that he agreed with the medical examiner's conclusion that Sandra had not suffered a skull fracture. Brown then attempted to rationalize his testimony from the preceding day by stating that he had not been asked whether he now believed his report, which he had prepared at a time closer to Sandra's death, to be erroneous.

Oliver contends on appeal that the trial court erred in denying his motion for a mistrial because of Brown's incorrect testimony. Although we agree with Oliver that the Commonwealth should not have knowingly presented Brown's inaccurate testimony without attempting at least to explain the discrepancy between the testimony of Brown and the report of the medical examiner, we disagree that Brown's testimony necessitated a mistrial, instead of some less drastic curative measure such as an admonition.

A mistrial is "extraordinary relief" that is appropriate only "for situations in which an error has been committed that is of such magnitude that the litigant would be denied a fair and impartial jury absent a new trial."[23] In other words, a mistrial is appropriate

---

[23]  Shabazz v. Commonwealth, 153 S.W.3d 806, 811 (Ky. 2005).

only when there is a "'manifest necessity' for a new trial."[24] We review a trial court's decision to deny a mistrial using the deferential abuse of discretion standard.[25]

We question why the Commonwealth chose to present Brown's testimony at all, especially when it knew, or should have known, that Brown's report conflicted with that of the medical examiner. No party to an action should present testimony which it knows, or should know, is incorrect or otherwise unreliable. Nevertheless, under the circumstances of this case, we do not believe the trial court abused its discretion when it denied Oliver's motion for a mistrial.

Oliver did not object when Brown's report, which contained the objectionable reference to exposed brain matter, was displayed to the jury. And Oliver did not object when Brown referred to Sandra's hair as being wet with brain matter. So Oliver has failed to preserve any error regarding Oliver's reference to exposed brain matter. Furthermore, Brown eventually endorsed the medical examiner's conclusion that Sandra's skull had not been fractured. In fact, Brown's earlier statements to the contrary may well have inured to Oliver's benefit because Brown's quick about-face, coupled with the medical examiner's conclusive testimony that Sandra had not suffered a broken skull and that no brain matter had leaked from Sandra's skull, could have served to discredit Brown and, by extension, the Commonwealth's case. Additionally, the importance of Brown's testimony was minimal, at best, because Oliver admitted to killing Sandra and to striking her in the head with a bat. Moreover, Oliver had the opportunity to cross-examine Brown vigorously.

---

[24] Id. at 810 (quoting Gould v. Charlton, Inc., 929 S.W.2d 734, 738 (Ky. 1996)).

[25] Id. at 811.

13

Most importantly, Oliver can point to no real prejudice he suffered as a result of Brown's testimony. Oliver claims that the jury "undoubtedly took with them to deliberations" an erroneous "picture of a fractured skull and leaking brain matter. . . ." But this argument is sheer speculation, especially in light of Brown's later testimony that he agreed with the medical examiner's conclusion that there was no skull fracture and the medical examiner's own testimony that there was neither a skull fracture nor leaking brain matter. We conclude, therefore, that the trial court did not abuse its discretion by denying Oliver's motion for a mistrial.

### E. The Jury Instructions Regarding the Presumption of Innocence Do Not Constitute Palpable Error.

In its murder instruction, the trial court instructed the jury that among other things, it could convict Oliver of murder only if he intentionally caused Sandra's death and was not acting under the influence of extreme emotional disturbance (EED). But the accompanying presumption of innocence instruction did not contain language stating that if it believed beyond a reasonable doubt that Oliver was guilty of intentional murder but had a reasonable doubt whether Oliver was acting under EED when he killed Sandra, the jury should return a guilty verdict on first-degree manslaughter, not murder.[26]

We have held that an instruction on reasonable doubt with respect to EED "is required when there is evidence authorizing an instruction on extreme emotional disturbance."[27] But, in the case at hand, Oliver admits that he did not object to the trial

---

[26] The proper presumption of innocence instruction regarding the commission of a murder under EED is set forth at William S. Cooper & Donald P. Cetrulo, Kentucky Instructions to Juries, Criminal § 2.03 (5th ed. 2006).

[27] Hager, 41 S.W.3d at 831-32.

14

court's failure to give the reasonable doubt instruction regarding EED. So our review is limited to determining whether the failure to give the instruction at issue rises to the level of palpable error.

Oliver's palpable error argument is the same one we rejected in Sherroan v. Commonwealth.[28] In Sherroan, we held as follows:

> Appellant asserts error in the trial court's failure to include in the generic presumption of innocence/reasonable doubt instruction an admonition to the jury that if it would otherwise have found him guilty of murder, but had a reasonable doubt as to whether he was acting under EED, he could be convicted only of first-degree manslaughter. Contrary to the Commonwealth's argument, such an instruction is required if requested and if warranted by the evidence. However, this issue was not preserved for appeal because Appellant did not object to the instructions on these grounds, make an appropriate motion, or tender such an instruction. RCr 9.54(2). Since the murder instructions directed the jurors not to convict Appellant of murder unless they believed beyond a reasonable doubt that he was not acting under EED, the failure to include the additional admonition in the presumption of innocence/reasonable doubt instruction did not adversely affect Appellant's substantial rights. RCr 10.26.[29]

Oliver has not convinced us to depart from our holding in Sherroan. So we reject Oliver's claim for palpable error relief on this issue.

### III. Conclusion

For the foregoing reasons, the judgment of the Perry Circuit Court is affirmed.

Cunningham, Noble, Schroder, Scott and Venters, JJ., concur. Abramson, J., concurs in result only by separate opinion. Minton, C.J., dissents by separate opinion.

---

[28]  142 S.W.3d 7 (Ky. 2004).

[29]  Id. at 23 (internal citations omitted).

15

COUNSEL FOR APPELLANT:

Emily Holt Rohrer
Assistant Public Advocate
Department of Public Advocacy
100 Fair Oaks Lane, Suite 302
Frankfort, Kentucky 40601


COUNSEL FOR APPELLEE:

Jack Conway
Attorney General

William Robert Long, Jr.
Assistant Attorney General
Criminal Appellate Division
1024 Capital Center Drive
Frankfort, Kentucky 40601-8204

# Supreme Court of Kentucky

## 2005-SC-000864-MR

SIMON OLIVER        APPELLANT

V.

ON APPEAL FROM PERRY CIRCUIT COURT
HONORABLE WILLIAM ENGLE, III, JUDGE
NO. 04-CR-000180

COMMONWEALTH OF KENTUCKY        APPELLEE

**OPINION BY JUSTICE ABRAMSON**

**CONCURRING IN RESULT ONLY**

I concur with the result reached by the majority but write separately because I agree with the dissent that the evidence justified a self-defense instruction. It was not the trial court's role to decide it was "not reasonable to believe that Oliver thought he was justified in using that much force." Under Kentucky law, as the dissent aptly notes, the jury, not the judge, determines that issue. Nevertheless, the failure to instruct in this case was not prejudicial given the savage nature of Oliver's responsive attack on Sandra. In short, there is no substantial possibility that the outcome would have been different given the overwhelming evidence of brutality. Neder v. United States, 527 U.S. 1, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999).

# $\mathfrak{Supreme\ Court\ of\ Kentucky}$

## 2005-SC-000864-MR

SIMON OLIVER                                                                          APPELLANT

ON APPEAL FROM PERRY CIRCUIT COURT
V.                                    HONORABLE WILLIAM ENGLE, III, JUDGE
NO. 04-CR-00180

COMMONWEALTH OF KENTUCKY                                            APPELLEE

## DISSENTING OPINION BY CHIEF JUSTICE MINTON

Until today, the settled law in this Commonwealth was that a criminal

defendant had a right to have a claim of self-defense decided by the jury if that

claim was "supported to *any* extent by the testimony."[1]   Until today, the doctrine

of self-defense in this Commonwealth centered upon a defendant's subjective

belief in the need to use force and not upon a court's purportedly objective

determination of the reasonableness of the defendant's self-defense claim.[2]  But

today, in a revolutionary and breathtakingly sweeping holding, the majority holds

that a judge may properly refuse to instruct the jury on a defendant's self-defense

claim if the judge does not believe the defendant was really acting in self-

---

[1]  Thomas v. Commonwealth, 170 S.W.3d 343, 349 (Ky. 2005) (emphasis added).

[2]  Commonwealth v. Hager, 41 S.W.3d 828, 842 (Ky. 2001) ("all KRS 503 justifications, including self-protection, are premised upon a defendant's actual subjective belief in the need for the conduct constituting the justification and not on the objective reasonableness of that belief.").

defense. From this de facto abandonment of bedrock precedent, I must respectfully dissent.

I agree with the general proposition stated by the majority that a person is not entitled to claim a right to defend against a danger that has passed. After all, in those situations, there is nothing that a person need defend against. But I am baffled by the majority's speculative conclusion that Sandra was clearly no longer an imminent threat to Oliver the instant that Oliver wrested the bat from Sandra's hands. I submit that it is impossible for us to know at what precise point Sandra ceased being a threat to Oliver. After all, once Oliver took the bat away from her, Sandra was still presumably enraged and in striking distance of Oliver.

Perhaps the majority's viewpoint would be correct if the evidence was that Oliver disarmed Sandra yet did not bludgeon her until later. Those are not the facts here. The undisputed facts are that Oliver and Sandra were engaged in a heated argument during which Sandra struck Oliver in the head with a bat, and Oliver retaliated by taking the bat from Sandra and beating her repeatedly with the same bat. Under those facts, I believe the majority errs by concluding, tellingly with no citation to a case with similar facts, that Oliver's right to act in self-defense ended as a matter of law the instant he disarmed Sandra.

The majority's conclusion that Oliver was not entitled to a self-defense instruction because Sandra was no longer an imminent threat to Oliver is based upon sheer speculation. And even if I agreed with the majority's view that Sandra was no longer a threat to Oliver once he took the bat from her, I strongly

believe that Oliver had the right to have a jury of his peers, not a judge, decide this important factual issue.[3]

The majority correctly observes that under our precedent, a trial court has an absolute duty to give instructions on the whole law,[4] including every theory of the case which is deducible from,[5] or supported to any extent by, the evidence.[6] And this duty includes giving an instruction on any lawful defense or lesser-included offense supported by the evidence.[7] So our task is to determine if the evidence presented at trial supported the giving of a self-protection instruction.[8]

---

[3]  *Cf.* Hayes v. Commonwealth, 870 S.W.2d 786, 787-88 (Ky. 1993) (emphasizing fact that self-defense is based upon subjective view of defendant and holding that trial court committed reversible error by refusing to instruct jury on self-defense in case where it was unclear and disputed whether defendant was an aggressor or was acting in self-defense).

[4]  *See, e.g.,* Lee v. Commonwealth, 329 S.W.2d 57, 60 (Ky. 1959).

[5]  Manning v. Commonwealth, 23 S.W.3d 610, 614 (Ky. 2000).

[6]  Thomas, 170 S.W.3d at 349.

[7]  *Id.*

[8]  The Commonwealth contends that we should not consider Oliver's own testimony in considering whether he was entitled to a self-defense instruction. The Commonwealth does not base its argument upon any alleged evidentiary defect in Oliver's testimony that would have rendered that testimony inadmissible. Rather, the Commonwealth contends that we should not consider that testimony merely because it occurred after the jury instruction conference and Oliver did not re-urge the trial court to instruct the jury on self-defense based on his testimony. The majority agrees that Oliver was not required to ask twice for a self-defense instruction in order to preserve this issue for appellate review. Thus, we should additionally emphatically reject the Commonwealth's unsupported contention that we should not consider Oliver's own testimony in determining whether a self-defense instruction was warranted simply because that testimony occurred after the jury instruction conference. A court, whether trial or appellate, must consider *all* properly admitted evidence before determining what instructions will be submitted to the jury. Refusing to consider properly admitted evidence simply because the evidence was admitted after a prematurely held jury instruction conference would be highly improper. After all, the timing of a jury instruction conference is not within the parties' control. As stated previously by the majority, the trial court should have re-evaluated what instructions were necessary after the close of *all* of the evidence. So I believe we must consider *all* of the evidence in determining whether Oliver was entitled to a self-protection instruction.

Oliver testified that he acted in self-defense. It is obvious to me that there was at least some evidence of record to support the giving of a self-defense instruction. Yet the majority finds that the trial court did not err in refusing to give the self-protection instruction.

In Kentucky, self-protection is governed by KRS 503.050. Subsection 2 of that statute provides, in relevant part, that a defendant is justified in using deadly force upon another "when the defendant believes that such force is necessary to protect himself against death, serious physical injury, . . . [or a] felony involving the use of force. . . ." Clearly, a blow to the head with a baseball bat could easily result in death or serious physical injury.[9] In fact, I agree with the Court of Appeals of New York's forceful statement that "[i]t is too obvious to need elaboration that when used outside its sports context, [a baseball bat] is a dangerous instrument of the very type recognized as an effective weapon since primitive times."[10] Therefore, a juror could have believed that Oliver snatched the bat from Sandra and struck her with it in order to protect himself from death or serious physical injury.[11]

---

[9] Indeed, other states have held that a baseball bat could be classified as a dangerous instrument or deadly weapon. *See, e.g.,* Humphrey v. State, 833 So.2d 679, 681 (Ala.Crim.App. 2002) (holding that a baseball bat may be a deadly weapon); Hughes v. State, 739 S.W.2d 458, 460 (Tex.Ct.App. 1987) (holding that a baseball bat may constitute a deadly weapon). Even a child's toy baseball bat has been deemed to qualify as a dangerous instrument. People v. Torres, 621 N.Y.S.2d 340 (N.Y.App.Div. 1995).

[10] People v. Ozarowski, 344 N.E.2d 370, 375 n.3 (N.Y. 1976).

[11] Although not directly argued by Oliver, he also theoretically could have been seeking to protect himself from a felony involving the use of force. A person may commit the Class C felony offense of assault in the second degree by intentionally causing physical injury to another by means of a deadly weapon or dangerous instrument. KRS 508.020(1)(b). Though Oliver's injuries were not severe, he did suffer a contusion on his face. Thus, he did suffer a physical injury. KRS 500.080(13)

This conclusion is not altered, even if Oliver's striking Sandra with his hand outside the residence at some time before she struck him inside the residence with a baseball bat means that Oliver is deemed the initial aggressor, because there is no indication that Oliver's first blow struck outside the residence was a use of deadly force.[12] Thus, Sandra's apparently retaliatory striking of Oliver in the head with a baseball bat could be viewed as an impermissible use of deadly force in response to Oliver's use of non-deadly force.[13] But, again, I believe that this should properly be a jury question that could have been decided through the use of an initial aggressor instruction in accordance with the requirements set forth in KRS 503.060(3).

Although ignored by the majority, it is clear from both the self-defense statute itself and our existing case law that the focus on a self-defense justification must be on a defendant's subjective belief in the need for self-defense, not the objective reasonableness of that belief.[14] However, a defendant

---

("'Physical injury' means substantial physical pain or any impairment of physical condition"); <u>Meredith v. Commonwealth</u>, 628 S.W.2d 887, 888 (Ky.App. 1982) (when dangerous instrument or deadly weapon is used intentionally, "*any*" injury will suffice for purposes of assault in the second degree).

[12] *See* KRS 503.060 ("Notwithstanding the provisions of KRS 503.050, the use of physical force by a defendant upon another person is not justifiable when: . . . 3) The defendant was the initial aggressor, except that his use of physical force upon the other person under this circumstance is justifiable when:

   (a)   His initial physical force was nondeadly and the force returned by the other is such that he believes himself to be in imminent danger of death or serious physical injury. . . .").

[13] *See* <u>Jones v. Commonwealth</u>, 313 Ky. 827, 233 S.W.2d 1007, 1009 (1950) (holding that someone struck by another's fist only had the right to use such force as reasonably necessary to repel the attack, meaning that person did not act in self-defense when he used deadly force in response to being struck with a fist).

[14] <u>Hager</u>, 41 S.W.3d at 842.

may be mistaken in his belief that he needed to use force in self-defense.[15] In fact, a defendant may be so mistaken in his belief in the need for self-defense that his mistaken belief "may be so unreasonably held as to constitute wantonness or recklessness with respect to the circumstances then being encountered."[16] In those situations, KRS 503.120(1) provides that self-protection is unavailable as a defense to an offense with a mens rea of wantonness or recklessness.[17] However, a wantonly or recklessly held belief in the need for self-protection is still a defense to an offense requiring an intentional mental state.[18] So a wantonly held belief in the need for self-protection would result in a defendant, who would otherwise have been convicted of intentional murder, instead being convicted of manslaughter in the second degree.[19] And a recklessly held belief in the need for self-protection would result in a defendant, who would otherwise have been convicted of intentional murder, instead being convicted of reckless homicide.[20] Wanton or recklessly held beliefs in the need for self-protection are, thus, often termed "imperfect self-defense" because they

---

[15] *Id.*

[16] *Id.*

[17] KRS 503.120(1) provides as follows:

When the defendant believes that the use of force upon or toward the person of another is necessary for any of the purposes for which such belief would establish a justification under KRS 503.050 to 503.110 but the defendant is wanton or reckless in believing the use of any force, or the degree of force used, to be necessary or in acquiring or failing to acquire any knowledge or belief which is material to the justifiability of his use of force, the justification afforded by those sections is unavailable in a prosecution for an offense for which wantonness or recklessness, as the case may be, suffices to establish culpability.

[18] Hager, 41 S.W.3d at 842-43.

[19] *Id.* at 842.

[20] *Id.* at 843.

only serve to lessen the degree of the crime for which a defendant is convicted, unlike "perfect" self-defense, which would result in an acquittal.[21]

It is clear to me that the trial court's stated reason for rejecting a self-defense instruction—that Oliver could not have reasonably believed that he needed to use as much force as he actually used—is misplaced; and, instead of adopting it, the majority should have rejected it. It is properly the role of the jury, not the court, to assess the weight and substance to be given a defendant's self-defense evidence, including whether the belief for self-defense was wantonly or recklessly held.[22] In other words, since Oliver introduced testimony supporting his claim of self-defense, the trial court was obliged to give proper self-defense instructions to the jury, both "perfect" and "imperfect," regardless of whether the trial court itself felt Oliver's belief in the need for self-defense was objectively unreasonable.[23] Simply put, a judge's own belief that a defendant's claim of self-defense is objectively unreasonable is of no consequence. The trial court's

---

[21] As it pertains to murder, the only lesser-included offense option presented to the jury was manslaughter in the first degree.

[22] See, e.g., Townsend v. Commonwealth, 474 S.W.2d 352, 353-54 (Ky. 1971) (holding that defendant's claim of self-defense is one properly resolved by jury because "[i]f the testimony relied on to establish self-defense is contradicted or if there is evidence of any fact or circumstance from which a jury could reasonably conclude that some element of self-defense was lacking, a directed verdict should not be given."); West v. Commonwealth, 780 S.W.2d 600, 601 (Ky. 1989) (holding that question of whether appellant committed murder or acted in self-defense was a "classic jury question. . . .").

[23] Again, objective reasonableness is not really a proper term in dealing with self-defense because the focus is on the defendant's subjective beliefs, not on the objective reasonableness of that belief.

7

failure to submit self-defense instructions to the jury in this case means that Oliver's murder conviction should have been vacated.[24]

Frankly, I share the majority's impression that Oliver wildly overreacted to being struck in the head with a baseball bat. And I suspect that a properly instructed jury may well have rejected Oliver's self-defense claim. But, unlike the majority, I believe that my view of the objective reasonableness of Oliver's self-defense claim is, for purposes of whether a self-defense instruction must have been given, irrelevant. Oliver presented testimony that he acted in self-defense. So under our settled precedent, he was entitled to have the jury instructed on his self-defense theory.

Although it does not expressly say so, the majority actually suggests that the lack of a self-defense instruction is a harmless error.[25] I disagree. For one thing, the majority does not acknowledge precedent holding that an erroneous instruction, or the erroneous failure to give an instruction, is presumed prejudicial.[26] Second, I respectfully submit that the majority errs when it applies an abuse of discretion standard to this issue. Since jury instructions are matters of law, I believe that de novo appellate review applies when the claim of error is

---

[24] Oliver does not argue self-defense as it pertains to his other convictions. So the trial court's failure to instruct on self-defense affects only Oliver's murder conviction.

[25] *See* majority opinion, p. 8 ("While it may be the better practice in cases like this to give the self-defense instruction, upon appellate review we cannot say that the trial court abused its discretion under these facts. . . .").

[26] McKinney v. Heisel, 947 S.W.2d 32, 35 (Ky. 1997) ("In this jurisdiction it is a rule of longstanding and frequent repetition that erroneous instructions to the jury are presumed to be prejudicial; that an appellee claiming harmless error bears the burden of showing affirmatively that no prejudice resulted from the error."); Commonwealth v. Hager, 35 S.W.3d 377, 379 (Ky.App. 2000) (*citing* McKinney's statement regarding presumption of prejudice in erroneous jury instructions in a criminal case).

preserved.[27] Third, I believe the lack of a jury instruction on perfect self-defense cannot be harmless error because Oliver was entitled to an imperfect self-defense instruction. If that instruction had been given, I believe there is at least a reasonable possibility that taking all the evidence into account (including the strong evidence of mental illness presented by Oliver and the fact that it is undisputed that Sandra struck Oliver in the head with the baseball bat before Oliver began to strike her with the bat), a jury would have found Oliver guilty of manslaughter under an imperfect self-defense theory.

Although at first blush the majority's approach has some appeal, given Oliver's violent bludgeoning and possible drowning of Sandra, it is clear under our precedent that Oliver was entitled to have his claim of self-defense decided by the jury. Because I believe the majority's holding upends settled law and usurps the jury's traditional role as fact-finder, I dissent.

---

[27] *See, e.g.,* Reece v. Dixie Warehouse and Cartage Co., 188 S.W.3d 440, 449 (Ky.App. 2006) ("Appellate review of jury instructions is a matter of law and, thus, *de novo.*").